# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP958 |
| COMPLETE TITLE: | In the matter of the mental commitment of Mary F.-R.: <br><br> Milwaukee County, <br>    Petitioner-Respondent, <br>  v. <br> Mary F.-R., <br>    Respondent-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 345 Wis. 2d 63, 823 N.W.2d 841
(Ct. App. 2012 – Unpublished)

| | |
|---|---|
| OPINION FILED: | November 26, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 3, 2013 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Victor Manian |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ABRAHAMSON, C.J., concurs. (Opinion filed.) <br> ZIEGLER, ROGGENSACK, GABLEMAN, JJJ., concur. (Opinion filed.) |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the respondent-appellant-petitioner, there were briefs by *Hannah B. Schieber*, assistant state public defender, and oral argument by *Hannah B. Schieber*.

For the petitioner-respondent, there was a brief by *Kimberly R. Walker*, Milwaukee County corporation counsel, and *Colleen A. Foley*, principal assistant corporation counsel, and oral argument by *Colleen A. Foley*.

2013 WI 92

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2012AP958

(L.C. No. 2011ME4847)

STATE OF WISCONSIN      :      IN SUPREME COURT

**In the matter of the mental commitment of Mary F.-R.:**

**Milwaukee County,**

       **Petitioner-Respondent,**

    **v.**

**Mary F.-R.,**

       **Respondent-Appellant-Petitioner.**

**FILED**

**NOV 26, 2013**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 N. PATRICK CROOKS, J. This is a review of an unpublished court of appeals decision[1] that affirmed the circuit court's order to involuntarily commit Mary F.-R. under Wis. Stat. § 51.20 (2011-12).[2] This case concerns the

---

[1] Milwaukee Cnty. v. Mary F.-R., No. 2012AP958, unpublished slip. op. (Wis. Ct. App. Oct. 2, 2012).

[2] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

constitutionality of the jury trial provisions available to individuals subject to involuntary commitment for treatment under Chapter 51. Under Wis. Stat. § 51.20(11), such individuals may request a six-person jury for their involuntary commitment hearing and at least a 5/6 jury determination is required. The specific question we address is whether the constitutional guarantee of equal protection is violated when only a six-person jury with a 5/6 determination is available to those subject to involuntary commitment under Chapter 51 when compared to the 12-person jury and a requirement of unanimity for individuals subject to involuntary civil commitment proceedings as sexually violent persons under Chapter 980. We also are presented with the question of whether Mary F.-R. forfeited her equal protection challenge by failing to make a contemporaneous objection at the time the circuit court empaneled the six-person jury at her commitment hearing.

¶2 On December 8, 2011, a jury of six found that Milwaukee County met its burden to involuntarily commit Mary F.-R. for treatment for mental illness under Wis. Stat. § 51.20. The following day, the circuit court entered an order, which committed Mary F.-R. for a period no longer than six months. Mary F.-R. appeals that order, arguing that the six-person non-unanimous jury available to her under Wis. Stat. § 51.20(11) violates equal protection. In addition, Mary F.-R. argues that she did not forfeit her equal protection argument, even though she failed to raise a contemporaneous objection because she had already made multiple requests for a 12-person jury.

2

¶3    To reach Mary F.-R.'s equal protection challenge, we assume, without deciding, that she did not forfeit her right to challenge Wis. Stat. § 51.20(11).  We hold that the differences in the jury provisions for initial commitment hearings under § 51.20(11) and Chapter 980 do not violate Mary F.-R.'s constitutional right to equal protection under the Fourteenth Amendment or under Article I, Section 1 of the Wisconsin Constitution.  The legislature chose to allow for differing jury protections for initial commitments under § 51.20 and Chapter 980 and these choices, reflected in the legislative enactments in question, are presumed constitutional.[3]  Mary F.-R. has not overcome this presumption and has not demonstrated the unconstitutionality of § 51.20 beyond a reasonable doubt.  Furthermore, considering that Mary F.-R's specific challenge relates to jury provisions, we find that rational basis review is appropriate.[4]  We hold that the different purposes of the provisions in question, the varied legislative schemes, and the range of liberty restrictions imposed on individuals subject to commitment under Wis. Stat. § 51.20, when compared to Chapter 980, provide a rational basis for the legislative decision to provide a unanimous 12-person jury for initial Chapter 980 commitments and a six-person jury with a 5/6 verdict for initial

---

[3]  State v. McGuire, 2010 WI 91, ¶25, 328 Wis. 2d 289, 786 N.W.2d 227.

[4]  See ¶¶35-38, for our discussion of rational basis review, the appropriate level of judicial scrutiny in this case.

3

commitments under § 51.20(11). Accordingly, we affirm the court of appeals.

### I. Background

¶4 The facts underlying Mary F.-R.'s initial commitment are not in dispute. Police officers responded to Mary F.-R.'s apartment complex to address a call from a concerned neighbor. After investigating further, officers placed Mary F.-R. in emergency detention. Following this detention, the treatment director of the Milwaukee County Mental Health division or his designee[5] filed a supplemental statement to the emergency detention.[6]

¶5 After an individual is detained under §§ 51.15 or 51.20, a court must hold a hearing to determine "whether there is probable cause to believe the allegations" set forth in the petition for commitment. Wis. Stat. § 51.20(7)(a). On November 30, 2011, the Milwaukee County Circuit Court, Court Commissioner Lindsey Grady presiding, held a hearing to determine whether Milwaukee County had probable cause to detain Mary F.-R. On the same day, Mary F.-R. filed a handwritten request for a 12-person

---

[5] The supplemental statement is unclear as to whether the treatment director or a designee signed the statement. In any regard, the validity of the signed statement is not in question.

[6] Under Wis. Stat. § 51.15(4)(b), the filing and notice of the treatment director or designee statement is treated as if Milwaukee County had filed a petition for involuntary commitment under Wis. Stat. § 51.20.

jury.[7] During the probable cause hearing, Mary F.-R. also orally requested a 12-person jury.[8] Part way through the hearing, Mary F.-R. became unsatisfied with her attorney and fired her. The circuit court commissioner suspended the probable cause hearing and scheduled a continuance to allow new counsel to be appointed. Prior to the conclusion of the November 30, 2011, proceeding, the circuit court accepted Mary F.-R.'s demand to have a jury trial, but did not specifically address her demand to have a 12-person jury. On December 2, 2011, the circuit court, the Honorable William W. Brash presiding, continued with the probable cause hearing. At this hearing, Mary F.-R. requested a 12-person jury for her commitment trial.[9] At the conclusion of this hearing, the circuit court found that Milwaukee County had met its burden to show that probable cause existed to believe the allegations asserted in the emergency detention and treatment director statement to commit Mary F.-R.

---

[7] The handwritten request stated, "<u>Please</u> This is my <u>Third 12 Person Jury Trial Demand</u> for any involuntary medication and any involuntary commitment here or elsewhere. . . . Two 12 Person Jury Demands were put in yesterday. One at 10am in PCS and one on this ward after arrival after 12:30pm Sat. 11/26/2011."

[8] Mary F.-R. stated, "[y]ou'll hear a different story about what happened on that ward, and five 12-person jury demands – – or six."

[9] Mary F.-R. stated, "I want a 12-person jury demand; and it's been in numerous times; and I have all the grievances and all the jury demands . . . I want that in the file . . . all my jury demands."

5

¶6 Following a finding of probable cause, the next step in involuntary commitment proceedings under Chapter 51 is to hold a final hearing. On December 8, 2011, the circuit court, the Honorable Victor Manian presiding, empaneled a six-person jury for Mary F.-R.'s final commitment hearing. Neither Mary F.-R. nor her attorney objected to the six-person jury at this time. Following the hearing, the jury unanimously found that Mary F.-R. met the requirements under Wis. Stat. § 51.20(1)(a) for involuntary commitment. Specifically, the jury found that Mary F.-R. was mentally ill, that she was a proper subject for treatment, and that she was a danger to herself and to others. The following day, December 9, 2011, the circuit court ordered Mary F.-R. be committed to the Milwaukee County Behavioral Health Division, a locked facility, for a period not to exceed six months.

¶7 Mary F.-R. appealed the circuit court's order.[10] Relevant to the issue before this court, Mary F.-R. challenged the constitutionality of Wis. Stat. § 51.20(11)[11] on equal

---

[10] As part of her appeal, Mary F.-R. challenged whether sufficient evidence existed for the jury to determine that she was a danger to herself or others. That issue is not before this court.

[11] Section 51.20(11), in relevant part, provides:

JURY TRIAL. (a) If before involuntary commitment a jury is demanded by the individual against whom a petition has been filed under sub. (1) or by the individual's counsel if the individual does not object, the court shall direct that a jury of 6 people be selected to determine if the allegations specified in sub. (1) (a) or (ar) are true. . . .

6

protection grounds. The court of appeals affirmed Mary F.-R.'s involuntary commitment. It held that Mary F.-R. forfeited her equal protection argument by failing to argue its unconstitutionality at the circuit court and by failing to object, either by herself or through counsel, to the jury of six at the time of empanelment.

¶8 Mary F.-R. raises two challenges before this court that relate only to the constitutionality of Wis. Stat. § 51.20(11). First, she argues that she did not forfeit her equal protection challenge when she failed to make a contemporaneous objection at the time the circuit court empaneled the six-person jury. Second, she argues that both § 51.20(11) and Chapter 980 are civil commitment statutes, and that the jury provisions available for initial commitment hearings for both should be the same. Specifically, Mary F.-R. argues that § 51.20(11), on its face,[12] violates her constitutional right to equal protection because § 51.20(11) does not require a 12-person jury and a

---

(b) No verdict shall be valid or received unless agreed to by at least 5 of the jurors.

[12] Mary F.-R, asserts that her equal protection argument is a facial challenge to the constitutionality of Wis. Stat. § 51.20(11) and not an "as applied" challenge. A facial challenge is defined as "[a] claim that a statute is unconstitutional on its face — that is, that it always operates unconstitutionally." Black's Law Dictionary 261 (9th ed. 2009). In contrast an "as applied" challenge is "a claim that a statute is unconstitutional on the facts of a particular case or in its application to a particular party." Id. Milwaukee County does not dispute Mary F.-R.'s classification of her challenge as a facial challenge.

7

unanimous verdict like the applicable provisions under Chapter 980.[13]

## II. Standard of Review

¶9  A statute's constitutionality is a question of law that this court reviews de novo.  State v. West, 2011 WI 83, ¶22, 336 Wis. 2d 578, 800 N.W.2d 929.  "Statutes are presumed to be constitutional, and a party challenging a statute's constitutionality must demonstrate that it is unconstitutional beyond a reasonable doubt."  State v. McGuire, 2010 WI 91, ¶25, 328 Wis. 2d 289, 786 N.W.2d 227.

## III. Analysis

## A. Introduction

¶10  The United States Constitution[14] and the Wisconsin Constitution[15] guarantee individuals equal protection under the

---

[13] The relevant jury provisions for Chapter 980 initial commitments are Wis. Stat. § 980.03(3) and Wis. Stat. § 980.05(2).

Section 980.03(3), in relevant part, provides:

"The person who is the subject of the petition, the person's attorney, or the petitioner may request that a trial under s. 980.05 be to a jury. . . . A verdict of a jury under this chapter is not valid unless it is unanimous."

The relevant portion of Section 980.05(2) provides:

"The person who is the subject of the petition, the person's attorney, or the petitioner may request that a trial under this section be to a jury of 12."

[14] Section 1 of the Fourteenth Amendment of the United States Constitution provides:

law.  U.S. Const. amend. XIV, § 1; Wis. Const. art. I, § 1. Equal protection under our state constitution is generally interpreted in the same way as the equal protection clause found in the federal constitution.  State ex rel. Sonneborn v. Sylvester, 26 Wis. 2d 43, 49, 132 N.W.2d 249 (1965).

¶11  As Mary F.-R.'s equal protection challenge requires a comparison of jury provisions in Wis. Stat. § 51.20(11) to jury provisions in Chapter 980, we will begin with a brief overview of the use of jury determinations in civil proceedings and specifically in civil commitment proceedings.  We will then proceed by giving a brief overview of involuntary commitment

---

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

[15] "Art. I, Sec. 1, of the Wisconsin Constitution is framed in language of a Declaration of Rights and reminiscent of the Declaration of Independence, and many times has been held to be substantially equivalent of the due-process and the equal-protection clauses of the 14th Amendment to the U.S. Constitution." State ex rel. Sonneborn v. Sylvester, 26 Wis. 2d 43, 49, 132 N.W.2d 249, 252 (1965)(footnote omitted).  Article I, Section 1 of the Wisconsin Constitution provides:

"All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed."

procedures under Wis. Stat. § 51.20 and Chapter 980 before addressing Mary F.-R.'s specific arguments.

¶12 The Wisconsin Constitution allows the legislature to provide for a specified number of jurors for a valid verdict, but not less than 5/6 thereof in civil cases. Wis. Const. art. I, § 5 (amended 1922).[16] The legislature has chosen to allow six-person juries in civil cases. Wis. Stat. § 756.06(2)(b). An exception is provided for juries in Chapter 980 cases. Id. In addition, the legislature has sanctioned the use of a non-unanimous 5/6 jury verdict for all six-person juries permitted by Wis. Stat. § 756.06(2)(b). See Wis. Stat. § 805.09.

¶13 Wisconsin Stat. § 51.20 is a civil statute that governs involuntary commitments. Wisconsin has a long history of utilizing juries in involuntary commitment cases. Since 1880, Wisconsin has allowed individuals subject to confinement for purposes of psychiatric treatment to have the option of a jury determination. State ex rel. Farrell v. Stovall, 59 Wis.

---

[16] Article I, Section 5 of the Wisconsin Constitution provides:

   The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law. Provided, however, that the legislature may, from time to time, by statute provide that a valid verdict, in civil cases, may be based on the votes of a specified number of the jury, not less than five-sixths thereof.

2d 148, 163, 207 N.W.2d 809 (1973) (citing <u>Humphrey v. Cady</u>, 405 U.S. 504, 509 (1972)).[17]

### B. Involuntary Commitments Under Wis. Stat. § 51.20

¶14 Wisconsin Stat. § 51.20 governs involuntary commitments for treatment purposes. This process commences with the filing of a petition for examination that requires a showing that an individual has a mental illness, a drug dependency, or is developmentally disabled. Wis. Stat. § 51.20(1)(a)1. In addition, the petitioner must show that the individual is a "proper subject for treatment." <u>Id.</u> Finally, the petition requires a showing that the individual is dangerous. Wis. Stat. § 51.20(1)(a)2. A showing that the individual is a danger to himself or herself or to others will meet the dangerousness requirement. Wis. Stat. § 51.20(1)(a)2.a.-b.

¶15 Following the filing of a petition, the individual is appointed counsel through the Wisconsin State Public Defender's

---

[17] The first reference to the use of juries in commitment proceedings appeared in Section 593 of the Wisconsin Statutes. Wis. Stat. ch. 32, § 593 (1883 Supp.) (as amended by ch. 266, 1880, sec 2, ch. 202, 1881, and sec. 1, ch. 35, 1883). This Section stated "[t]he application . . . shall specify whether or not a trial by jury is desired by the applicant," but did not specify the number of jurors or whether the verdict was required to be unanimous. <u>Id.</u> The 1898 version of the Wisconsin Statutes, however, specified that "[i]f a jury trial be demanded by the person alleged to be insane or by any relative or friend acting on his behalf . . . the procedure shall be the same as in trials by jury in justices' courts." Wis. Stat. ch. 32, § 585b (1898). Juries, if requested, in justices' courts, also referred to as courts of justices of the peace, were comprised of "six men." Wis. Stat. ch. 156, § 3639 (1898). In addition, juries in justices' courts were required to reach a unanimous determination. Wis. Stat. ch. 156, §§ 3652-53 (1898).

Office. Wis. Stat. § 51.20(3). If an order of detention is issued, a hearing must be held to determine whether probable cause exists to believe the allegations asserted in the petition for commitment. Wis. Stat. § 51.20(7). In making a probable cause determination and all subsequent determinations, a court must consider alternative grounds for commitment, which include consideration of the least restrictive treatment method available to meet the needs of the individual. See Wis. Stat. § 51.20(1m); See also Wis. Stat. § 51.001.[18]

¶16 If the court finds that probable cause exists, it schedules a final commitment hearing. Wis. Stat. § 51.20(7)(c), (10)(c). The court may choose to release the

---

[18] The legislative policy statement found in Wis. Stat. § 51.001 speaks to the purpose of involuntary commitments, budgetary concerns, and the preference to impose the least restrictive treatment option available that will meet an individual's needs. Section 51.001 states:

Legislative policy. (1) It is the policy of the state to assure the provision of a full range of treatment and rehabilitation services in the state for all mental disorders and developmental disabilities and for mental illness, alcoholism and other drug abuse. There shall be a unified system of prevention of such conditions and provision of services which will assure all people in need of care access to the least restrictive treatment alternative appropriate to their needs, and movement through all treatment components to assure continuity of care, within the limits of available state and federal funds and of county funds required to be appropriated to match state funds.

(2) To protect personal liberties, no person who can be treated adequately outside of a hospital, institution or other inpatient facility may be involuntarily treated in such a facility.

individual prior to the final hearing and may impose conditions for release. Wis. Stat. § 51.20(8)(a). Alternatively, the court, considering the needs and condition of the individual, may order the individual to remain detained pending the final hearing. Wis. Stat. § 51.20(8)(b).

¶17 At least 48 hours prior to the final hearing, the individual or individual's attorney may request that the final hearing be before a jury of six. Wis. Stat. § 51.20(11)(a). A valid jury verdict requires agreement from five of the six jurors. Wis. Stat. § 51.20(11)(b).

¶18 If a jury is requested and at least five of the six jurors agree that the petitioner has proved the requirements under Wis. Stat. § 51.20(1)(a) by clear and convincing evidence, the court will order treatment for a period not to exceed six months. Wis. Stat. § 51.20(13)(a)3., (e), (g)1. Treatment may be on an outpatient or inpatient basis as directed by the court. Wis. Stat. § 51.20(13)(a)3., (dm). Individuals subject to involuntary commitment orders may appeal the court's order. Wis. Stat. § 51.20(15).

¶19 If the court orders inpatient treatment, such treatment must be "in the least restrictive manner consistent with the requirements of the subject individual in accordance with a court order designating the maximum level of inpatient facility." Wis. Stat. § 51.20(13)(c)2. The county department providing treatment is also required to place the individual in the facility and program that is "least restrictive of the individual's personal liberty, consistent with the treatment

13

requirements of the individual." Wis. Stat. § 51.20(13)(f). The county is also required to alter an individual's treatment plan as necessary to provide treatment continuously in the least restrictive setting possible. Id.

¶20 While the county may discharge an individual subject to inpatient treatment at any time, it may also petition the court to recommit an individual for an additional maximum time period of one year. Wis. Stat. § 51.20(13)(g)3., 2r., 1. Twenty-one days prior to the expiration of the initial six-month maximum commitment period, the court must file an evaluation of the individual along with a recommendation regarding recommitment. Wis. Stat. § 51.20(13)(g)2r. If recommitment is recommended, the court will proceed with a recommitment hearing. Wis. Stat. § 51.20(13)(g)3.

¶21 Under Wis. Stat. § 51.20(16), committed individuals may petition the court for reexamination and/or modification or cancellation of the court's commitment order. If no hearing has been held within 120 days prior to filing, the court must grant a hearing to consider the individual's petition. Wis. Stat. § 51.20(16)(c). Finally, an individual committed by court order for treatment of mental illness must be reevaluated within 30 days of commitment, within three months of the initial reevaluation, and, at a minimum, every six months thereafter. Wis. Stat. § 51.20(17). Mandatory evaluations ensure that the individual receives treatment in the least restrictive setting available to meet his or her needs. See Id.

C. Involuntary Commitments Under Chapter 980

¶22 Chapter 980 commitments are also civil proceedings. State v. Rachel, 2002 WI 81, ¶41, 254 Wis. 2d 215, 647 N.W.2d 762. However, we have found that Chapter 980 committees share many protections available to criminal defendants. State v. Curiel, 227 Wis. 2d 389, 417, 597 N.W.2d 697 (1999).[19] One of these protections is that the petitioner in a Chapter 980 commitment has the burden to prove that an individual is a sexually violent person beyond a reasonable doubt. See Wis. Stat. § 980.05(3)(a). Another protection, granted by the legislature, is the ability of the individual subject to a Chapter 980 commitment to request a unanimous 12-person jury for his or her initial commitment hearing. Wis. Stat. § 980.03(3); Wis. Stat. § 980.05(2).

¶23 This court has summarized the legislative scheme for the involuntary commitment of sexually violent persons under Chapter 980. See e.g., State v. Post, 197 Wis. 2d 279, 297-301, 541 N.W.2d 115 (1995). We are mindful, however, of the legislative changes made to Chapter 980 since our decision in

---

[19] We recognize that our reasoning in Curiel was based, in part, on a now repealed subsection of Chapter 980. See Wis. Stat. § 980.05(1m)(1995-96), repealed by 2005 Wis. Act 434. This subsection included the following language, "[a]t the trial to determine whether the person who is the subject of a petition under s. 980.02 is a sexually violent person, all rules of evidence in criminal actions apply. All constitutional rights available to a defendant in a criminal proceeding are available to the person." Id. Even without the language from the now repealed Wis. Stat. § 980.05(1m), Chapter 980 continues to offer several protections similar to those allowed criminal defendants discussed herein.

Post.[20] Therefore, we will proceed by discussing the aspects of Chapter 980 most pertinent to Mary F.-R.'s equal protection challenge.

¶24 The involuntary commitment of a sexually violent person commences with the filing of a petition alleging that the individual is sexually violent. Wis. Stat. § 980.02. A petition may be filed by the Wisconsin Department of Justice or, if the department does not file a petition, by the district attorney in the county where the individual was convicted of a sexually violent offense, where the individual will reside upon discharge, or where the individual is currently in custody. Wis. Stat. § 980.02(1)(a)-(b); State v. Byers, 2003 WI 86, ¶43 263 Wis. 2d 113, 665 N.W.2d 729 ("[A] request from the agency with jurisdiction and a subsequent decision by the DOJ not to file are prerequisites to a district attorney's authority to file a Chapter 980 petition.").

¶25 The individual subject to commitment under Chapter 980, that person's attorney, or the petitioner may request that the commitment trial be to a 12-person jury. Wis. Stat. § 980.05(2). The parties, however, may stipulate that the trial be to a jury of fewer than 12, and proceed accordingly with the court's approval. Wis. Stat. § 980.05(2m)(b)-(c). The jury's verdict must be unanimous. Wis. Stat. § 980.03(3).

---

[20] Since our December 9, 1995, decision in Post, the Wisconsin Legislature has amended Chapter 980 on several occasions. See 1997 Wis. Act 205, §§ 104-05; 2005 Wis. Act 344, §§ 633-35; 2005 Wis. Act 434, §§ 60-130.

16

¶26 If a jury finds that the individual is a sexually violent person, the court must commit the person to the custody of the department of health services until the individual is no longer a sexually violent person. Wis. Stat. § 980.06. The commitment order must specify that the person be placed in institutional care. Id.

¶27 Reexamination of the committed individual occurs within 12 months of initial confinement and again at least every 12 months thereafter. Wis. Stat. § 980.07(1). At the earliest, an individual committed under Chapter 980 may petition the court for supervised release after 12 months of commitment. See Wis. Stat. § 980.08.

¶28 The committed individual may petition the court for discharge at any time; however, Wis. Stat. § 980.09(1) states:

> The court shall deny the petition . . . without a hearing unless the petition alleges facts from which the court or jury may conclude the person's condition has changed since the date of his or her initial commitment order so that the person does not meet the criteria for commitment as a sexually violent person.

Recently, in State v. Arends, 2010 WI 46, ¶¶3-5, 325 Wis. 2d 1, 784 N.W.2d 513, we clarified the discharge petition process and explained that a circuit court must follow a two-step process outlined in Wis. Stat. § 980.09(1)-(2) when evaluating a Chapter 980 committee's discharge petition. If the discharge petition does not "allege[] facts from which a reasonable trier of fact could conclude the petitioner is no longer a sexually violent person," then the discharge petition fails at step one. Arends, 325 Wis. 2d 1, ¶30. If sufficient facts exist within the

17

petition, the court then moves to step two, which requires a "limited review of the sufficiency of the evidence." Id., ¶43. "If any facts support a finding in favor of the petitioner, the court must order a discharge hearing on the petition; if no such facts exist, the court must deny the petition." Id.

¶29 An individual subject to Chapter 980 commitment may request a jury of six for his or her discharge hearing. Wis. Stat. § 980.095(1)(a). If a jury is requested, five or the six jurors must agree to discharge. Wis. Stat. § 980.095(1)(c).

### D. Constitutional Challenge

¶30 Mary F.-R. alleges that Wis. Stat. § 51.20(11) violates her constitutional right to equal protection. Specifically she argues that Wis. Stat. § 51.20 cannot constitutionally provide lesser jury protections for initial commitment hearings than those afforded by Chapter 980 because the individuals affected are similarly situated, and both types of commitments promote similar governmental interests of protecting the public and treating the committed individual. However, as a preliminary matter, this court must first consider whether Mary F.-R. forfeited her constitutional challenge when she failed to make a contemporaneous objection at the time the circuit court empaneled the six-person jury.

### 1. Forfeiture

¶31 Mary F.-R. contends that she did not forfeit her ability to facially challenge Wis. Stat. § 51.20(11) because under State v. Bush, 2005 WI 103, ¶17, 283 Wis. 2d 90, 699 N.W.2d 80, a facial challenge to the constitutionality of a

18

statute goes to the subject matter jurisdiction of the court and "cannot be waived."[21]

¶32 In State v. Bush, we addressed the procedural question of whether the defendant in that case forfeited his ability to bring a facial challenge to the constitutionality of Chapter 980 when he failed to raise the constitutional issue in either of his appeals following his initial commitment. Bush, 283 Wis. 2d 90, ¶14. In holding that the defendant did not forfeit his challenge to the constitutionality of Chapter 980, we said "that while an 'as applied' challenge to the constitutionality of a statute may be waived, a facial challenge is a matter of subject matter jurisdiction and cannot be waived." Id., ¶17 (citing State v. Cole, 2003 WI 112, ¶46, 264 Wis. 2d 520, 665 N.W.2d 328 and State v. Trochinski, 2002 WI 56, ¶34 n. 15, 253 Wis. 2d 38, 644 N.W.2d 891).

¶33 Milwaukee County argues that Bush is inapplicable to this case since Mary F.-R. does not challenge the entirety of Chapter 51 or the essential purpose of the chapter as was the case in Bush.

---

[21] While we used the term "waiver" in Bush instead of "forfeiture," we have since clarified the difference in meaning between the two terms. "Although cases sometimes use the words 'forfeiture' and 'waiver' interchangeably, the two words embody very different legal concepts. 'Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.'" State v. Ndina, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612 (quoting United States v. Olano, 507 U.S. 725, 733 (1993)).

19

¶34 We decline the parties' invitation to address our holding in Bush. Instead we reach the merits of Mary F.-R.'s equal protection challenge by assuming, without deciding, that she did not forfeit her challenge when she failed to make a contemporaneous objection at the time the circuit court empaneled the six-person jury. We also note that Mary F.-R. made multiple requests for a 12-person jury prior to the empanelment of the six-person jury.

### 2. Level of Judicial Scrutiny

¶35 We next turn to the question of the appropriate level of scrutiny that should be used to evaluate Mary F.-R.'s claim. The United States Supreme Court has established two levels of judicial scrutiny that traditionally apply to equal protection challenges.[22] See City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439-40 (1985). "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." Id. at 440. This level of scrutiny is referred to as rational basis. However, the other option, strict scrutiny, will apply "when a statute classifies by race, alienage, or national origin" or "when state laws impinge on personal rights protected by the Constitution." Id. Stated another way, "[e]qual protection requires strict scrutiny of a

---

[22] A third level of scrutiny, intermediate scrutiny, not discussed here typically applies to "discriminatory classifications based on sex or illegitimacy." Clark v. Jeter, 486 U.S. 456, 461 (1988).

20

legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." State v. Annala, 168 Wis. 2d 453, 468, 484 N.W.2d 138 (1992)(citing Mass. Bd. of Ret. v. Murgia, 427 U.S. 307, 312 (1976)). In these circumstances, laws must be analyzed using strict scrutiny review and upheld only if narrowly tailored "to serve a compelling state interest." City of Cleburn, 473 U.S. at 440.

¶36 Mary F.-R. asks this court to apply strict scrutiny in evaluating her equal protection challenge because she asserts that her fundamental liberty interest is at issue. She contends that the differences in the jury provisions in § 51.20 and Chapter 980 are not narrowly tailored to promote the government interests of protecting the public and treating the committed individual as required under strict scrutiny analysis. In the alternative, if this court determines that rational basis review is appropriate, Mary F.-R. argues that the differences in the jury provisions for initial commitments under § 51.20(11) and Chapter 980 are not rationally related to the governmental interests they serve.

¶37 Milwaukee County, however, argues that rational basis review rather than strict scrutiny should apply. It argues that strict scrutiny analysis cannot apply, because Mary F.-R. does not belong to a suspect class, and because her challenge relates to jury provisions and not to her fundamental liberty interest.

21

¶38 In evaluating prior challenges based on the differences found in Chapter 51 and Chapter 980, this court has generally refrained from deciding which level of scrutiny should apply. Post, 197 Wis. 2d at 321. However, we agree with Milwaukee County that rational basis analysis is the appropriate level of judicial scrutiny to apply to this case. We disagree with Mary F.-R.'s contention that strict scrutiny applies due to her fundamental liberty interest. While liberty is a fundamental right, Foucha v. Louisiana, 504 U.S. 71, 86 (1992), and involuntary civil commitment is a "significant deprivation of liberty," Addington v. Texas, 441 U.S. 418, 425 (1979), Mary F.-R.'s challenge relates only to the jury procedures available for initial commitment hearings under Wis. Stat. § 51.20 and not to the use of involuntary commitments in general. Unlike a situation where protection for a fundamental liberty interest is interfered with impermissibly, having a six-person jury trial is not the "equivalent to having no jury trial at all." State v. Huebner, 2000 WI 59, ¶18, 235 Wis. 2d 486, 611 N.W.2d 727. There is no right to a 12-person jury in civil proceedings such as here. Id., ¶¶17-19. In addition, we are satisfied that Mary F.-R. does not belong to a suspect class.[23] Since strict

_____

[23] Mary F.-R. makes no argument that she belongs to a suspect class. The United States Supreme Court has explained that a "suspect class is one 'saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.'" Mass. Bd. of Ret. v. Murgia, 427 U.S. 307, 313 (1976)(citing San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 28 (1973)). The Supreme Court has specifically found

22

scrutiny does not apply to this case, we evaluate Mary F.-R's equal protection argument using rational basis review.

### 3. Equal Protection Analysis

¶39  In response to Mary F.-R.'s equal protection argument, Milwaukee County does not dispute that § 51.20(11) and Chapter 980 provide different jury provisions for initial commitments. Both parties also take the position that individuals subject to involuntary commitment under § 51.20 and Chapter 980 are similarly situated to some extent.  However, Milwaukee County notes the long-standing use of six-person juries in civil proceedings, and differentiates between the two groups by focusing on the difference in liberty restraint faced by each of the groups.  Milwaukee County asserts that these differences provide a rational basis for the different jury provisions at issue.

¶40  We agree with Milwaukee County that the availability of a non-unanimous six-person jury in a § 51.20 commitment trial does not violate equal protection.  Chapter 980 committees are subject to increased liberty restraints when compared to Chapter 51 committees. The legislature has imposed restraints in both situations for treatment purposes and for the purposes of protecting the public.  We hold that the legislative decision to allow the added protection of a 12-person unanimous jury in Chapter 980 commitment trials, but not in Chapter 51 commitment

that individuals facing discriminatory treatment based on race or national origin will be considered part of a suspect class. Id.

trials, is rationally related to different treatment needs and differing levels of dangerousness that § 51.20 and Chapter 980 seek to address, as well as stricter rules concerning confinement in Chapter 980.

¶41 As the party challenging the constitutionality of Wis. Stat. § 51.20(11), Mary F.-R. has the burden to prove her equal protection violation beyond a reasonable doubt. See Post, 197, Wis. 2d at 301. It is well established under rational basis review that "[e]qual protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made." See Baxstrom v. Herold, 383 U.S. 107, 111 (1966). "[T]he crucial question is whether there is an appropriate governmental interest suitably furthered by the differential treatment." Police Dep't of Chicago v. Mosley, 408 U.S. 92, 95 (1972). Therefore, we first consider the governmental interests served through involuntary commitments under both § 51.20 and Chapter 980.

¶42 Wisconsin Stat. § 51.20 serves three governmental interests, which are apparent from the statutory language. First, the statute serves to protect the public. Wis. Stat. § 51.20(1)(a)2.b. Second, it provides protection of the committed individual. Wis. Stat. § 51.20(1)(a)2.a, c.-e. Finally, it is concerned with providing treatment to the committed individual in the least restrictive treatment setting available, which meets the individual's needs. Wis. Stat. § 51.20(1)(a)1; Wis. Stat. § 51.001.

24

¶43 Chapter 980 furthers two governmental interests. Protection of the public and treatment for the committed individual are such interests. See Post, 197 Wis. 2d at 302; Bush, 283 Wis. 2d 90, ¶13.

¶44 The pertinent question in our equal protection analysis is whether the differences in the jury protections offered under Wis. Stat. § 51.20(11) and Chapter 980 rationally relate to the governmental interests served by each of the legislative enactments. We have previously commented that Chapter 980 committees present a "heightened level of dangerousness and . . . unique treatment needs," which "justify distinct legislative approaches to further the compelling governmental purpose of protection of the public." Post, 197 Wis. 2d at 322-23. These same considerations, treatment needs and protection of the public, provide a rational basis for the legislature to afford different jury protections to individuals subject to § 51.20 commitments when compared to Chapter 980.

¶45 We recognize that individuals subject to commitments under Wis. Stat. § 51.20 and Chapter 980 share some common characteristics and that, in general, both statutory chapters address somewhat similar governmental interests. For example, Wis. Stat. § 51.20 and Chapter 980 share the goals of protection of the public and treatment of the individual. In addition, on a broader scale, both chapters govern classes of individuals that the legislature has deemed in need of civil commitment.

¶46 Aside from these similarities, however, significant differences exist between § 51.20 committees and Chapter 980

25

committees. In addition, there are pronounced differences in the specific governmental purposes served by § 51.20 commitments when compared to Chapter 980 commitments. These differences provide a rational basis for the legislature to provide a 12-person unanimous jury option to Chapter 980 committees, and a six-person non-unanimous jury to individuals subject to § 51.20.

¶47 As a general example of the differences between Chapters 51 and 980, the governmental interest of protecting the individual is present in Chapter 51 commitments, but not in Chapter 980. See Wis. Stat. § 51.20(1)(a)2.a.(requiring a dangerousness factor for commitment that may be met if the individual is a danger to himself or herself). Specifically, and more importantly, additional differences between § 51.20 and Chapter 980 all relate to the lessened liberty restraint experienced by § 51.20 committees when compared to Chapter 980 committees. The increased liberty deprivation imposed on Chapter 980 committees addresses both the treatment and protection of the public purposes of these types of commitments.

¶48 At every step of the involuntary commitment process, individuals subject to Chapter 980 are subject to greater liberty restrictions than individuals subject to Wis. Stat. § 51.20. For example, following the filing of a petition, individuals subject to Wis. Stat. § 51.20 commitments may remain in the community before a final determination is made. Wis. Stat. § 51.20(2). This is also the case following the probable cause hearing. Wis. Stat. § 51.20(8)(a). Individuals subject to commitment under Chapter 980, however, remain in prison

following the filing of a petition for commitment. See Wis. Stat. § 980.015; Wis. Stat. § 980.02(1m). Furthermore, once an individual is found to be a sexually violent person, the commitment order must specify placement in institutional care. Wis. Stat. § 980.06.

¶49 There are also significant differences in the amount of time that an individual may be committed depending on whether commitment is ordered under Chapter 51 or Chapter 980. Initial commitments under Chapter 51 are limited to a maximum time period of six months. Wis. Stat. § 51.20(13)(g). Initial commitments under Chapter 980, however, can last indefinitely. Wis. Stat. § 980.06.

¶50 The legislative policy underlying Chapter 51 further illustrates a significant difference in purpose between § 51.20 commitments and Chapter 980 commitments. The legislative approach to Chapter 51 is to provide treatment to individuals in the least restrictive setting that is available to meet each individual's needs. Wis. Stat. § 51.001(1). This is reflected throughout § 51.20 and is especially apparent in the provisions that require periodic reevaluations of the committed person to ensure that the least restrictive treatment setting is being used. Wis. Stat. § 51.20(17). However, Chapter 980 commitments are not subject to a similar goal of providing treatment in the least restrictive manner possible, and reevaluations may be done on a less frequent basis. See Wis. Stat. § 980.07(1) (discussing reevaluation).

27

¶51 Another example of the increased liberty restraints placed on Chapter 980 committees is reflected in the types of treatment available to the two groups. In line with a goal of providing the least restrictive treatment setting possible, initial § 51.20 commitments can occur on an outpatient basis, but Chapter 980 commitments cannot. Compare Wis. Stat. § 51.20(13)(a)3, (dm) with Wis. Stat. § 980.06.

¶52 Furthermore, rational basis review may be satisfied if "any reasonably conceivable state of facts . . . could provide a rational basis for the classification," F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993). That the legislature actually based its decision on the stated facts is not required. Id. at 315. Cost savings considerations provide an additional rational basis for why the legislature may have chosen to provide the option of a six-person jury in involuntary commitments under Chapter 51 instead of a 12-person jury.[24]

---

[24] Johnson v. Louisiana, 406 U.S. 356 (1972), supports our conclusion that cost savings considerations provide a rational basis for the differences in jury size and jury unanimity at issue today. In that case, the United States Supreme Court upheld Louisiana's three tiered criminal jury structure, which imposed different sized juries and varying unanimity requirements based on the seriousness of the charged offense. Id. at 363-64. Specifically, "Louisiana has permitted less serious crimes to be tried by five jurors with unanimous verdicts, more serious crimes have required the assent of nine of 12 jurors, and for the most serious crimes a unanimous verdict of 12 jurors is stipulated." Id. at 364. The Court held that the Louisiana legislature's decision to require different jury sizes and varied unanimity requirements was rationally related to cost savings efforts aimed at the criminal justice system; therefore, the legislative scheme did not violate equal protection. Id. at 363-64.

28

¶53 Mary F.-R. asserts that individuals subject to commitment under Wis. Stat. § 51.20 and Chapter 980 are similarly situated. This assertion is undoubtedly based on our prior holdings in Post, 197 Wis. 2d at 319-20, and Stovall, 59 Wis. 2d at 159-60.

¶54 In Post, we stated that "persons committed under chapters 51 and 980 are similarly situated for purposes of an equal protection comparison." Post, 197 Wis. 2d at 318-19. We based our decision in Post on Stovall in which we found the scope, purpose, and required judicial determination under Chapter 51 and Chapter 975, the now repealed Sex Crimes Act, to be similar. Stovall, 59 Wis. 2d at 164. These similarities led us to conclude that there existed no rational basis for the legislature to allow jury determinations for initial commitments and recommitments under Chapter 51, but not under Chapter 975. Id. at 168.

¶55 In light of our holding today, our prior discussion of whether individuals subject to involuntary commitment under Chapter 51 and Chapter 980 are similarly situated merits revisiting. First, it is necessary to consider that in concluding that individuals subject to involuntary commitment under Chapter 51 and Chapter 980 are similarly situated, Post relied on analysis that compared Chapter 51 to Chapter 975. Second, Post did not specifically compare the purposes of § 51.20 and Chapter 980. Third, and most importantly, in concluding that Chapter 51 and Chapter 980 committees were similarly situated, Post did not consider the narrow question of

29

specific jury provisions before us today to reach its conclusion. Finally, both Post and Stovall engage in what might appear to be a tiered approach to equal protection analysis. We have purposely declined, in our decision today, to utilize a tiered equal protection analysis, in which a threshold question of whether parties are similarly situated must be answered first before reaching the question of equal protection. "[W]hen properly understood and applied, 'similarly situated' is another way of stating the fundamental values of the Equal Protection Clause." Giovanna Shay, Similarly Situated, 18 Geo. Mason L. Rev. 581, 615 (2011).

¶56 Our decision today is in line with our previous determinations in equal protection cases involving Chapters 51 and 980. On prior occasions, this court has considered several challenges that involved claimed equal protection violations in Chapter 980 when compared to Chapter 51. In almost all cases, we have found that no equal protection violation occurred due to the state's compelling interest to protect the public through Chapter 980 commitments. For example, in Post, we found that in all but one of the equal protection challenges, "[t]he state's compelling interest in protecting the public provides the necessary justification for the differential treatment of the class of sexually violent persons." Post, 197 Wis. 2d at 321.

¶57 In Post, we did, however, find that an equal protection violation existed because Chapter 980 did not allow a committed individual the right to request a jury at his or her discharge hearing. Id. at 328-29. In contrast, Chapter 51

30

allowed the committed individual to request a six-person jury. Id. at 329. In doing so, we stressed the important role that a jury plays and its "'critical function of introducing into the process a lay judgment, reflecting values generally held in the community, concerning the kinds of potential harm that justify the State in confining a person for compulsory treatment.'" Id. at 328 (quoting Humphrey, 405 U.S. at 509).

¶58 In addition, we have previously held that a rational basis exists for other differences between Chapter 980 and Chapter 51. See State v. Burgess, 2003 WI 71, ¶33, 262 Wis. 2d 354, 665 N.W.2d 124 (holding that the differences between the chapters relating to the level of confidentiality afforded to each type of proceedings does not violate equal protection); West, 336 Wis. 2d 578, ¶96 (holding that the legislative decision to place the burden of proof on the committed individual seeking supervised release under Chapter 980 was justified due to the different degrees of dangerousness that each chapter seeks to address).

¶59 In line with these prior decisions, we hold that the differences between Chapter 51 and Chapter 980 are such that the legislature's decision to allow a six-person jury with a 5/6 determination under Wis. Stat. § 51.20(11) and a 12-person unanimous determination under Chapter 980 is rationally related to the differences in liberty restraint that the two groups face. We are not faced with the same situation that we previously addressed in Post, where Chapter 980 did not allow for a jury determination at the discharge stage, or in Stovall

31

where Chapter 975 failed to provide the option of a jury determination at either the initial commitment hearing or at recommitment hearings. Here, both Chapter 51 and Chapter 980 provide individuals with the option of a jury at their initial commitment hearings. We continue to recognize the importance of allowing jury determinations in involuntary commitment cases and note that § 51.20(11) provides the same jury provisions that are typical in other civil proceedings.

¶60 In sum, we find that although the governmental purposes of § 51.20 and Chapter 980 as well as the individuals subject to these civil involuntary commitment statutes share some overlapping goals and characteristics, Mary F.-R. has failed to prove the unconstitutionality of Wis. Stat. § 51.20(11) beyond a reasonable doubt. The differences in the jury provisions available to those committed under Wis. Stat. § 51.20(11) and Chapter 980 are rationally related to the difference in treatment needs and level of dangerousness presented by each group, as well as stricter rules concerning confinement in Chapter 980 commitments. The legislature has addressed these differences by imposing greater liberty restrictions on individuals subject to Chapter 980 commitments. The added protection of a 12-person unanimous jury is rationally related to such increased liberty restrictions imposed on Chapter 980 committees when compared to the lesser liberty deprivation experienced by individuals committed under Chapter 51.

IV. Conclusion

32

¶61 To reach Mary F.-R.'s equal protection challenge, we assume, without deciding, that she did not forfeit her right to challenge Wis. Stat. § 51.20(11). We hold that the differences in the jury provisions for initial commitment hearings under § 51.20(11) and Chapter 980 do not violate Mary F.-R.'s constitutional right to equal protection under the Fourteenth Amendment or under Article I, Section 1 of the Wisconsin Constitution. The legislature chose to allow for differing jury protections for initial commitments under § 51.20 and Chapter 980 and these choices, reflected in the legislative enactments in question, are presumed constitutional.[25] Mary F.-R. has not overcome this presumption and has not demonstrated the unconstitutionality of § 51.20 beyond a reasonable doubt. Furthermore, considering that Mary F.-R's specific challenge relates to jury provisions, we find that rational basis review is appropriate. We hold that the different purposes of the provisions in question, the varied legislative schemes, and the range of liberty restrictions imposed on individuals subject to commitment under Wis. Stat. § 51.20, when compared to Chapter 980, provide a rational basis for the legislative decision to provide a unanimous 12-person jury for initial Chapter 980 commitments and a six-person jury with a 5/6 verdict for initial commitments under § 51.20(11). Accordingly, we affirm the court of appeals.

---

[25] State v. McGuire, 328 Wis. 2d 289, ¶25.

33

*By the Court.*—The decision of the court of appeals is affirmed.

¶62 SHIRLEY S. ABRAHAMSON, C.J. *(concurring).* I join the majority opinion.[1] I write briefly regarding the impact of

_____

[1] The court has declared that deprivations of liberty in Chapter 51 and Chapter 980 proceedings require at least some jury protection on equal protection grounds. State v. Post, 197 Wis. 2d 279, 541 N.W.2d 115 (1995).

Although I agree that case law supports a holding that a six-person non-unanimous jury did not violate Mary F.-R.'s equal protection rights, I am troubled by the due process implications of the case and whether unanimity and the size of the jury are essential attributes of the right to jury trial. These issues were not briefed.

The United States Supreme Court has noted that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Addington v. Texas, 441 U.S. 418, 425 (1979). The Court has held that a non-unanimous six-person jury violates the Sixth Amendment right to trial by a jury in criminal cases. See Burch v. Louisiana, 441 U.S. 130, 99 S. Ct. 1623 (1979); Ballew v. Georgia, 435 U.S. 223, 98 S. Ct. 1029 (1978) (holding that a unanimous five-person jury was an unconstitutional deprivation of a jury trial in a criminal case).

Similarly, our court has held that in criminal trials, the Wisconsin Constitution requires a 12-person jury. State v. Hansford, 219 Wis. 2d 226, 580 N.W.2d 171 (1998).

Although both Chapter 51 and Chapter 980 commitment hearings are civil proceedings, not criminal proceedings, at common law a civil trial afforded parties a 12-person jury. See Hansford, 219 Wis. 2d at 238 ("[R]ight to a trial by jury guaranteed by the Wisconsin Constitution is the right to a jury of 12 persons as recognized by the common law as it existed at the time the constitution was adopted . . . .") (citing Norval v. Rice, 2 Wis. 17, 20-23 (1853)); see generally Richard S. Arnold, Trial by Jury: The Constitutional Right to a Jury of Twelve in Civil Trials, 22 Hofstra L. Rev. 1 (1993) (describing the voluminous historical evidence that the common law in England and the United States viewed a jury as being composed of twelve).

1

<u>State v. Bush</u>, 2005 WI 103, 283 Wis. 2d 90, 699 N.W.2d 80, on waiver, forfeiture, and subject matter jurisdiction.

¶63 The court held in <u>Bush</u> that "a facial challenge is a matter of subject matter jurisdiction and cannot be <u>waived</u>." 283 Wis. 2d 90, ¶17 (emphasis added).

¶64 After <u>Bush</u>, we clarified the difference between the concepts of "forfeiture" and "waiver." These concepts had become confused in our jurisprudence. In <u>State v. Ndina</u>, 2009 WI 21, 315 Wis. 2d 653, 761 N.W.2d 612, we distinguished between rights that receive a "forfeiture" standard and rights that receive a "waiver" standard:

> [S]ome rights are forfeited when they are not claimed at trial; a mere failure to object constitutes a forfeiture of the right on appellate review. . . . In contrast, some rights are not lost by a counsel's or a litigant's mere failure to register an objection at trial. These rights are so important to a fair trial that courts have stated that the right is not lost unless the defendant knowingly relinquishes the right.

<u>Id.</u>, ¶¶30-31.

¶65 Because <u>Bush</u> predated <u>Ndina</u>, we are left to ask (1) whether <u>Bush</u> referred to a facial challenge to the constitutionality of a statute as a right subject to a waiver standard or a forfeiture standard; and (2) whether Mary F.-R.'s

---

I am concerned that a non-unanimous six-person jury in civil commitments constituting a significant deprivation of liberty may be a violation of due process and a violation of a right to jury trial. Lines must be drawn somewhere on the size of the jury and the number of jurors required to agree on a verdict in a case of significant deprivation of liberty, if the substance of the jury trial right is to be preserved.

facial equal protection challenge to the jury statute is subject to a waiver standard or a forfeiture standard. The court leaves both questions unanswered in the instant case.[2]

¶66 It is also unclear whether Mary F.-R.'s facial challenge to a six-person non-unanimous jury attacked the circuit court's subject matter jurisdiction or its competence or neither. Bush plainly asserts that "a facial challenge is a matter of subject matter jurisdiction and cannot be waived." But as this court noted in Bush, "the jurisprudence concerning subject matter jurisdiction and a circuit court's competence to exercise its subject matter jurisdiction is murky at best."[3] This question about facial challenges, subject matter jurisdiction, and competence is also left for another day.

¶67 Is the size and the unanimity of the jury a procedural matter or a substantive one? This court has declared that trial by jury is a substantive right, stating that "[t]he legislature may modify old procedures, or create new ones, if the substantive right to jury trial is preserved."[4] The United States Supreme Court and this court have linked the number of jurors and jury unanimity directly to the substantive right of

---

[2] Although Mary F.-R. did not make a contemporaneous objection when a six-person jury was selected, she had previously asked several times for a 12-person jury. It is therefore arguable that she neither waived nor forfeited her objection to a six-person jury.

[3] Bush, 283 Wis. 2d 90, ¶16.

[4] State ex rel. Strykowski v. Wilkie, 81 Wis. 2d 491, 523, 261 N.W.2d 434 (1978).

3

trial by jury, rather than viewing them as mere procedural features.[5]

¶68  For the stated reasons, I concur.

---

[5] See Burch v. Louisiana, 441 U.S. 130, 99 S. Ct. 1623 (1979); Ballew v. Georgia, 435 U.S. 223, 98 S. Ct. 1029 (1978); State v. Hansford, 219 Wis. 2d 226, 580 N.W.2d 171 (1998).

¶69 ANNETTE KINGSLAND ZIEGLER, J. *(concurring).* I join the majority opinion and I agree with the majority that the court of appeals should be affirmed. I write separately because, unlike the majority, I would address, as did the court of appeals, whether Mary F.-R. forfeited her constitutional challenge by failing to raise a timely objection in the circuit court. I conclude that Mary F.-R. did indeed forfeit her challenge by not raising it or preserving it at the circuit court.

¶70 Mary F.-R. argues that her facial challenge to the constitutionality of Wis. Stat. § 51.20(11) cannot be forfeited. The majority declines to address this issue by "assuming, without deciding" that the challenge was not forfeited. See majority op. ¶34. The majority then proceeds to address the merits of Mary F.-R.'s constitutional arguments.

¶71 "A statute enjoys a presumption of constitutionality." State v. Smith, 2010 WI 16, ¶8, 323 Wis. 2d 377, 780 N.W.2d 90; State v. Janssen, 219 Wis. 2d 362, 370, 580 N.W.2d 260 (1998). "To overcome that presumption, a party challenging a statute's constitutionality bears a heavy burden." Smith, 323 Wis. 2d 377, ¶8; State v. Cole, 2003 WI 112, ¶11, 264 Wis. 2d 520, 665 N.W.2d 328. The burden of proof is the highest in the law, as the challenging party must "'prove that the statute is unconstitutional beyond a reasonable doubt.'" Smith, 323 Wis. 2d 377, ¶8 (quoting Cole, 264 Wis. 2d 520, ¶11). "This court has repeatedly held that it 'indulges every presumption to sustain the law if at all possible, and if any doubt exists

1

about a statute's constitutionality, we must resolve that doubt in favor of constitutionality.'" Cole, 264 Wis. 2d 520, ¶11 (internal citation omitted). I join the majority opinion which discusses Mary F.-R.'s failure to meet this heavy burden.

¶72 "Normally this court will not address a constitutional issue if the case can be disposed of on other grounds." State v. Hale, 2005 WI 7, ¶42, 277 Wis. 2d 593, 691 N.W.2d 637 (citing Labor & Farm Party v. Elections Bd., 117 Wis. 2d 351, 354, 344 N.W.2d 177 (1984); see also Kollasch v. Adamany, 104 Wis. 2d 552, 561, 313 N.W.2d 47 (1981). We at least in part granted the petition for review on the question of whether a facial challenge to the constitutionality of a statute can be forfeited. The issue was briefed and argued. I conclude that we should address the question.

¶73 Mary F.-R. attended the entire trial and was represented by able counsel. While she initially made a 12-person jury demand, Wis. Stat. § 51.20(11) calls for a civil 6-person jury. The circuit court impaneled a 6-person jury pursuant to the statute. No objection was made at the circuit court to that 6-person jury. The jury did not decide the matter in Mary F.-R.'s favor. She would now like to have a new trial with a 12-person jury.

¶74 Generally, the party who wishes to raise an issue on appeal needs to first raise the issue before the circuit court. State v. Dowdy, 2012 WI 12, ¶5, 338 Wis. 2d 565, 808 N.W.2d 691 ("As a general rule, issues not raised in the circuit court will not be considered for the first time on appeal."). "It is a

2

fundamental principle of appellate review that issues must be preserved at the circuit court. Issues that are not preserved at the circuit court, even alleged constitutional errors, generally will not be considered on appeal." State v. Huebner, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727 (holding that a defendant forfeited his right to challenge the six-person jury in his misdemeanor trial by failing to object at the circuit court level); State v. Caban, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997)(holding that a defendant had forfeited his right to challenge the admissibility of evidence against him by failing to object at the circuit court level). "Raising issues at the trial court level allows the trial court to correct or avoid the alleged error in the first place, eliminating the need for appeal. It also gives both parties and the trial judge notice of the issue and a fair opportunity to address the objection." Huebner, 235 Wis. 2d 486, ¶12; Caban, 210 Wis. 2d at 609. Here, Mary F.-R. failed to raise her objection with the circuit court, and so the forfeiture rule[1] would dispose of the case without subjecting Wis. Stat. § 51.20(11) to constitutional scrutiny.

¶75 Mary F.-R. argues that State v. Bush stands for the proposition that she did not forfeit her challenge. 2005 WI 103, 283 Wis. 2d 90, 699 N.W.2d 80. In Bush this court held that the

---

[1] As the majority points out, State v. Bush, 2005 WI 103, 283 Wis. 2d 90, 699 N.W.2d 80, predates this court's clarification of the usage of forfeiture and waiver. See majority op., ¶31 n.21; State v. Ndina, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612. The usage in Bush is properly expressed using the term "forfeiture."

3

challenge to the constitutionality of the statute could not be forfeited because at its heart it may implicate the subject matter jurisdiction of the court to hear the case in the first instance:

> [W]hile an 'as applied' challenge to the constitutionality of a statute may be waived, a facial challenge is a matter of subject matter jurisdiction and cannot be waived. The logic behind this conclusion is entirely consistent with Article VII, Section 8 of the Wisconsin Constitution. Article VII, Section 8 states that '[e]xcept as otherwise provided by law,' circuit courts have original jurisdiction 'in all matters civil and criminal.' If a statute is unconstitutional on its face, any action premised upon that statute fails to present any civil or criminal matter in the first instance.

283 Wis. 2d 90, ¶17 (internal citations omitted).

¶76 Mary F.-R. takes this language from Bush to mean that it is impossible to forfeit a facial challenge to a statute. However, Bush does not stand for the proposition that every facial challenge to any one procedural statute necessarily impacts the subject matter jurisdiction of the court. In fact, Bush challenged the constitutionality of the entirety of Chapter 980, not just a procedural provision of that chapter. Specifically, Bush argued that the State lacked the authority to commit him in the first instance under Chapter 980 as a "sexually violent person." By contrast, Mary F.-R.'s challenge is not that she cannot be committed under Chapter 51. Rather, she argues that she was entitled to a jury of 12 instead of a jury of six and that she had no duty to object at the circuit

4

court level.[2]   Her challenge, however, is to a procedural provision of Chapter 51, not to substantive statutes controlling commitment under Chapter 51 as a whole.

¶77  I write separately because Mary F.-R. has forfeited the right to challenge her six-person jury.  Unlike Bush, even if Mary F.-R. were to prevail and the jury provision were held to be unconstitutional, Milwaukee County would not be barred from pursuing her commitment.  Instead, the county would be required to retry her commitment, contrary to statute, with a then 12-person jury.  Fundamentally, Mary F.-R. never objected to the six-person jury until appeal.  I conclude that Mary F.-R.'s failure to object to a six-person jury at the circuit court level was a forfeiture of her right to challenge the constitutionality of Wis. Stat. § 51.20(11).

¶78  For the foregoing reasons I concur.

¶79  I am authorized to state that Justices PATIENCE DRAKE ROGGENSACK and MICHAEL J. GABLEMAN join this concurrence.

---

[2] It is noteworthy that, in each of the cases cited by Mary F.-R., the constitutional challenges were first raised in the circuit court.  See, e.g., Bush, 283 Wis. 2d 90, ¶11; State v. Trochinski, 2002 WI 56, ¶7, 253 Wis. 2d 38, 644 N.W.2d 891; State v. Cole, 2003 WI 112, ¶2, 264 Wis. 2d 520, 665 N.W.2d 328; State v. Molitor, 210 Wis. 2d 415, 418, 565 N.W.2d 248 (Ct. App. 1997); State ex rel. Skinkis v. Treffert, 90 Wis. 2d 528, 530, 280 N.W.2d 316 (Ct. App. 1979).