ANNETTE KINGSLAND ZIEGLER, J.
1 1. This *200 is a review of two published decisions of the court of appeals, State v. Alger, 2013 WI App 148, 352 Wis. 2d 145, 841 N.W.2d 329, and State v. Knipfer, 2014 WI App . 9, 352 Wis. 2d 563, 842 N.W.2d 526.[1] 1n Alger the court of appeals affirmed the Outagamie County Circuit Court's[2] order denying Michael Alger's ("Alger") petition for discharge from involuntary commitment under Wis. Stat. ch. 980 as a sexually violent person, as defined in Wis. Stat. § 908.01(7) (2011-12).[3] In Knipfer the court of appeals affirmed the Dane County Circuit Court's[4] order denying Ronald Knipfer's ("Knipfer") petition for discharge from involuntary commitment under Wis. Stat. ch. 980 as a sexually violent person.
¶ 2. Both Alger and Knipfer argue that the circuit courts erred by refusing to apply the Daubert[5] evidentiary standard under Wis. Stat. § 907.02(1)[6] to the State's expert witnesses who testified in their *201 Chapter 980 discharge petition trials. The legislature provided that the Daubert standard, which requires that particularized standards be met before an expert's testimony can be admitted, would "first apply to actions or special proceedings that are commenced on the effective date of this subsection [February 1, 2011]." 2011 Wis. Act 2, § 45(5).[7] Both Alger and Khipfer argue that the Daubert evidentiary standard should have applied to the State's expert testimony at trial on their Chapter 980 discharge petitions because the petitions commenced "actions" or "special proceedings" after the Daubert standard's first date of applicability.[8] Alger *202 and Knipfer further argue that their constitutional right to equal protection was violated when the Daubert evidentiary standard did not apply to and thus bar the State's expert testimony in their Chapter 980 discharge petition trials.[9] Knipfer also argues that his constitutional right to due process was violated because the circuit court did not apply the Daubert standard to the State's expert testimony in his Chapter 980 discharge petition trial.[10]
¶ 3. The State argues that the Daubert evidentiary standard does not apply to Alger's and Knipfer's petitions to discharge their Wis. Stat. ch. 980 commitments. The State contends that those discharge petitions did not commence "actions" or "special proceed *203 ings." Instead, the State argues, those discharge petitions are part of the underlying Chapter 980 commitments, which commenced several years before the Daubert standard's first date of applicability. The State also argues that the legislature had a rational basis for not applying the Daubert standard to the State's expert witnesses in Alger's and Knipfer's Chapter 980 discharge petition trials such that no violation of equal protection or due process occurred.
¶ 4. We conclude that the Daubert evidentiary standard under Wis. Stat. § 907.02(1) does not apply to expert testimony in Alger's and Knipfer's Wis. Stat. ch. 980 discharge petition trials because their discharge petitions did not "commence" "actions" or "special proceedings." The Daubert standard applies to "actions" or "special proceedings" commenced on or after February 1, 2011. The original Chapter 980 commitments here began several years before the Daubert standard was adopted, and although Alger's and Knipfer's petitions seek relief from those original commitments, those filings do not constitute the "commencement" of an "action" or a "special proceeding." We also conclude that because the legislature had a rational basis for not applying the Daubert evidentiary standard to expert testimony in post -Daubert Chapter 980 discharge petitions that seek relief from pre-Daubert Chapter 980 commitments, no violation of equal protection or due process occurred.
I. FACTUAL AND PROCEDURAL BACKGROUND
A. State v. Alger
¶ 5. It is undisputed that Alger was deemed to be a sexually violent person and was involuntarily committed under Wis. Stat. ch. 980 on May 10, 2005. He has been under Chapter 980 commitment ever since.
*204 ¶ 6. In the six years between his Chapter 980 commitment and Wisconsin's adoption of the Daubert evidentiary standard, Alger filed one petition for discharge and much other correspondence with the committing court. The Daubert standard was not a Wisconsin evidentiary standard during any prior proceeding in Alger's Chapter 980 commitment.
¶ 7. On April 21, 2011, about two months after Wisconsin adopted the Daubert evidentiary standard, Alger filed a petition for discharge from his Chapter 980 commitment. The petition relied on Alger's expert's opinion that Alger was no longer a sexually violent person. The State's expert opined that Alger was still a sexually violent person and should not be discharged from Chapter 980 commitment.
¶ 8. On July 29, 2011, Alger filed a motion in limine to exclude the State's expert testimony at the discharge petition trial on the ground that the testimony did not meet the newly adopted Daubert evidentiary standard. The State responded and argued that the Daubert standard did not apply because Alger's underlying commitment began before the Daubert standard was first applicable, and that the discharge petition was not a new "action" or "special proceeding." On November 18, 2011, Alger filed a supplemental memorandum in support of his motion in limine in which he also argued that his constitutional right to equal protection would be violated if the Daubert standard did not apply to the State's expert testimony in his Chapter 980 discharge petition trial. On November 23, 2011, Alger filed another Chapter 980 discharge petition and that petition was merged with his previously filed discharge petition.
¶ 9. On January 30, 2012, the circuit court denied Alger's motion in limine. The court concluded that *205 the Daubert evidentiary standard did not apply to Alger's Chapter 980 discharge petition. The court reasoned that Alger's discharge petition, although filed after the Daubert standard was first applicable, was part of the underlying Chapter 980 commitment proceeding that began when the State filed "[a] petition for a commitment trial under [Wis. Stat. §] 980.02" several years before the Daubert standard was even adopted. The court also concluded that the failure to apply the Daubert standard to Alger's Chapter 980 discharge petition did not violate equal protection.
¶ 10. On August 20, 2012, Alger's Chapter 980 discharge petition was tried before a six-person jury. Two expert witnesses testified on behalf of Alger and two experts testified on behalf of the State. The jury found that Alger still met the criteria for Chapter 980 commitment. On August 22, 2012, the court entered an order denying Alger's Chapter 980 discharge petition.
¶ 11. On November 19, 2013, the court of appeals affirmed the circuit court's order denying Alger's Chapter 980 discharge petition.
¶ 12. On December 18, 2013, Alger petitioned this court for review, which we granted on May 23, 2014.
B. State v. Knipfer
¶ 13. It is undisputed that Knipfer was deemed to be a sexually violent person and was involuntarily committed under Wis. Stat. ch. 980 on October 1, 2003. He has been under Chapter 980 commitment ever since.
¶ 14. In the seven and a half years between his Chapter 980 commitment and Wisconsin's adoption of the Daubert evidentiary standard, Knipfer filed three *206 petitions for discharge and much other correspondence with the committing court. The Daubert standard was not a Wisconsin evidentiary standard during any prior proceeding in Knipfer's Chapter 980 commitment.
| 15. On May 11, 2012, more than one year after Wisconsin adopted the Daubert evidentiary standard, Knipfer filed a petition for discharge from his involuntary Chapter 980 commitment. The petition relied on Knipfer's expert's opinion that Knipfer was no longer a sexually violent person. The State's expert opined that Knipfer was still a sexually violent person and should not be discharged from Chapter 980 commitment.
¶ 16. Knipfer argued that the Daubert evidentiary standard applied to the State's expert testimony in his Chapter 980 discharge petition trial such that the State's expert would be precluded from testifying. He also argued that his constitutional rights to equal protection and due process would be violated if the Daubert standard did not apply to exclude that expert testimony.
¶ 17. The State argued that the Daubert evidentiary standard did not apply to expert testimony in Knipfer's Chapter 980 discharge petition trial because, like Alger's discharge petition, Knipfer's discharge petition did not commence a new "action" or "special proceeding," and Knipfer's rights to equal protection and due process were not thereby violated.
¶ 18. On September 14, 2012, the circuit court held a bench trial on Knipfer's Chapter 980 discharge petition. The court held that the Daubert evidentiary standard did not apply to the State's expert testimony in the discharge petition trial because Knipfer's discharge petition was essentially a motion within the Chapter 980 commitment action, not a separate action or proceeding. The court also held that the failure to *207 apply the Daubert standard to the expert testimony in the discharge petition trial did not violate Knipfer's equal protection or due process rights. On September 20, 2012, the court held that Knipfer still met the criteria for Chapter 980 commitment and entered an order denying Knipfer's discharge petition.
¶ 19. On December 23, 2013, the court of appeals affirmed the circuit court's order denying Knipfer's Chapter 980 discharge petition.
¶ 20. On January 27, 2014, Knipfer petitioned this court for review, which we granted on May 23, 2014.
II. ANALYSIS
A. Standard of Review and Principles of Statutory Interpretation
¶ 21. The interpretation and application of a statute present questions of law that this court reviews de novo while benefitting from the analyses of the court of appeals and circuit court. State v. Ziegler, 2012 WI 73, ¶ 37, 342 Wis. 2d 256, 816 N.W.2d 238 (citing Heritage Farms, Inc. v. Markel Ins. Co., 2012 WI 26, ¶ 24, 339 Wis. 2d 125, 810 N.W.2d 465). This court begins statutory interpretation with the language of the statute. State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id. We interpret statutory language in relation to surrounding or closely-related statutes. Id., ¶ 46. "Where statutory *208 language is unambiguous, there is no need to consult extrinsic sources of interpretation, such as legislative history." Id.
f 22. The constitutionality of a statute is also a question of law that this court reviews de novo while benefitting from the analyses of the court of appeals and circuit court. State v. Smith, 323 Wis. 2d 377, ¶ 8, 323 Wis. 2d 377, 780 N.W.2d 90 (citing State v. Weidner, 2000 WI 52, ¶ 7, 235 Wis. 2d 306, 611 N.W.2d 684; State v. Janssen, 219 Wis. 2d 362, 370, 580 N.W.2d 260 (1998)). A statute is presumed constitutional. Id. (citing Janssen, 219 Wis. 2d at 370). A party challenging a statute's constitutionality bears a heavy burden to overcome that presumption. Id. (citing State v. Cole, 2003 WI 112, ¶ 11, 264 Wis. 2d 520, 665 N.W.2d 328). A party challenging a statute does not overcome the presumption of constitutionality by establishing that a statute's constitutionality is doubtful or that a statute is probably unconstitutional. Id. (citing Cole, 264 Wis. 2d 520, ¶ 11). "Instead, the party challenging a statute's constitutionality must 'prove that the statute is unconstitutional beyond a reasonable doubt.'" Id. (quoting Cole, 264 Wis. 2d 520, ¶ 11).
B. Whether the Daubert Evidentiary Standard Applies to Alger's and Knipfer's Chapter 980 Discharge Petitions
¶ 23. In short, Alger and Knipfer argue that the Daubert evidentiary standard applies to the State's expert testimony in their Chapter 980 discharge petition trials. They contend that their Chapter 980 discharge petitions "commenced" "actions" or "special *209 proceedings" after February 1, 2011, the first date of the Daubert standard's applicability. They argue that the State's initial petitions for Chapter 980 commitment began separate actions that concluded when the circuit courts ordered Alger and Knipfer to be committed in 2005 and 2003, respectively. Alger and Knipfer reason that the circuit courts' initial commitment orders were final because they had a right to appeal from the orders, and a final order "disposes of the entire matter in litigation as to one or more of the parties." Wis. Stat. § 808.03(1). They further contend that a committing court's continuing administrative authority over a Wis. Stat. ch. 980 commitment does not mean that a discharge petition is part of the underlying commitment proceeding. They reason that a committing court generally takes no action with respect to a Chapter 980 committed person until the person petitions the court. They assert that Chapter 980 discharge proceedings are separately governed by their own set of rules and procedures. Alger and Knipfer also note that a Chapter 980 discharge petition must allege that the petitioner's condition has changed since being committed. For these reasons, Alger and Knipfer assert that the Daubert evidentiary standard should apply to the State's expert testimony in their Chapter 980 discharge petition trials despite the fact that it did not apply to the initial commitment.
¶ 24. Alger and Knipfer further argue that failing to apply the Daubert evidentiary standard to their Chapter 980 discharge petitions at issue results in the pre-Daubert standard applying to every discharge petition they might file during their present commitments, even those petitions filed decades after the *210 Daubert standard was adopted. They contend that the legislature did not intend that absurd result.[11]
¶ 25. The State argues that the Daubert evidentiary standard does not apply to expert testimony in Alger's and Knipfer's Chapter 980 discharge petition trials. The State responds that a Chapter 980 discharge petition does not "commence" an "action" or a "special proceeding." Instead, according to the State, a discharge petition seeks relief from a Chapter 980 commitment. The State asserts that applying the preDaubert standard to Chapter 980 discharge petitions filed years after the Daubert standard was adopted would not be absurd because when a court reviews a Chapter 980 discharge petition, it may consider evidence that was admitted in a commitment hearing or prior discharge hearing under the pre-Daubert standard. The State rejects the notion that the pre-Daubert standard was so deficient that its continued application would be absurd.
¶ 26. We conclude that the Daubert evidentiary standard under Wis. Stat. § 907.02(1) does not apply to *211 expert testimony in Alger's and Knipfer's Chapter 980 discharge petition trials because their Chapter 980 discharge petitions did not "commence" "actions" or "special proceedings." Instead, the discharge petitions are part of the underlying Chapter 980 commitments that occurred several years before the Daubert standard's initial applicability on February 1, 2011.
¶ 27. In analyzing the arguments, we must first define the relevant words: "commence," "actions," and "special proceedings."[12] In Alger, the court of appeals defined "commence" as " 'begin; start[.]'" Alger, 352 Wis. 2d 145, ¶ 12 (quoting New Oxford American Dictionary 343 (2001)). "Accordingly, Wis. Stat. § 907.02(1) first applies to [actions or special proceedings] begun or started on February 1, 2011." Id. We agree.
¶ 28. " 'An action is an ordinary proceeding in a court of justice by which a party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.'" Ruediger v. Sheedy, 83 Wis. 2d 109, 121, 264 N.W.2d 604 (1978) (quoting State ex rel. Ashley v. Circuit Court for Milwaukee Cnty., 219 Wis. 38, 43, 261 N.W. 737 (1935)). The word "action" "refer[s] to an entire proceeding, not to one or more parts within a proceeding." State ex rel. Henderson v. Raemisch, 2010 WI App 114, | 22, 329 Wis. 2d 109, 790 N.W.2d 242. "The word 'action' in the Wisconsin statutes denotes the entire controversy at issue." Id., ¶ 23 (emphasis added) (quoting Gowan v. McClure, 185 Wis. 2d 903, 912, 519 N.W.2d 692 (Ct. App. 1994)) (quotation marks omitted); see also id. (stating that "action" "refers to an *212 entire proceeding, lawsuit or controversy"). For example, a motion to establish paternity is not an action. DiBenedetto v. Jaskolski, 2003 WI App 70, ¶¶ 25-26, 261 Wis. 2d 723, 661 N.W.2d 869. Similarly, a probate matter is not an action. See Estate of Stoeber v. Pierce, 36 Wis. 2d 448, 452, 153 N.W.2d 599 (1967).
¶ 29. A special proceeding, like an action, is a stand-alone proceeding that is not part of an existing case. Black's Law Dictionary 1398 (10th ed. 2014) (A special proceeding is "[a] proceeding that can be commenced independently of a pending action and from which a final order may be appealed immediately."); Wellens v. Kahl Ins. Agency, Inc., 145 Wis. 2d 66, 69, 426 N.W.2d 41 (Ct. App. 1988) ("[A] special proceeding [is] one occurring entirely outside the underlying action . . . ."); Ryder v. Soc’y Ins., 211 Wis. 2d 617, 619, 565 N.W.2d 277 (Ct. App. 1997) (citing Black's Law Dictionary 1084 (5th ed. 1979); Voss v. Stoll, 141 Wis. 267, 271, 124 N.W. 89 (1910)) ("Special proceedings [do] not include matters that [are] incident to an existing action."). Examples of special proceedings include a stand-alone proceeding for contempt or to condemn land, Wellens, 145 Wis. 2d at 69; a non-party's motion to intervene, id.; a voluntary assignment for the benefit of creditors, Wisconsin Brick & Block Corp. v. Vogel, 54 Wis. 2d 321, 324-25, 195 N.W.2d 664 (1972); and a proceeding to obtain discovery of books. Ernst v. The Steamer "Brooklyn", 24 Wis. 616, 616-17 (1869). These examples demonstrate how a special proceeding involves a separate filing outside of an action.
¶ 30. By contrast, the following are not deemed to be special proceedings: a motion for costs and attorney fees, Ryder, 211 Wis. 2d at 619; a motion to vacate a judgment on the ground of excusable neglect, *213 Wellens, 145 Wis. 2d at 70; and a party's motion to make a non-party into a party. State v. Wisconsin Tel. Co., 134 Wis. 335, 341, 113 N.W. 944 (1907). Similarly, a motion for postconviction relief "is a part of the original criminal action," and "is not a separate proceeding." Wis. Stat. § 974.06(2). All of these examples are neither actions nor special proceedings but rather, involve a filing made within an action.
¶ 31. In light of the foregoing definitions and examples, Alger's and Knipfer's Chapter 980 discharge petitions do not "commence" an "action" or a "special proceeding" because the discharge petitions could not exist without the initial commitments and are "a part of' the initial commitments. Hence, even though the requests for discharge are seeking relief from commitments, the requests are necessarily dependent on and tethered to the original commitments. A discharge petition does not "start" or "begin" an "action" or a "special proceeding" but rather, it is more akin to a motion within an existing matter. A discharge proceeding is "incident to an existing action" and does not stand alone or exist "entirely outside the original action." See Ryder, 211 Wis. 2d at 619; Wellens, 145 Wis. 2d at 69. Instead, Alger's and Knipfer's discharge petitions are a part of the "entire controversy at issue," the underlying Chapter 980 commitments. See Henderson, 329 Wis. 2d 109, ¶ 23. The analogy between a Chapter 980 discharge petition and a motion for post-conviction relief is particularly apt as each seeks relief from a final order without directly challenging the final order. See Wis. Stat. §974.06(1), (2); Wis. Stat. § 980.09(1). A Chapter 980 discharge petition, like a motion for postconviction relief, does not "commence" an "action" or a "special proceeding."
*214 I 32. Stated differently, a Chapter 980 discharge petition is necessarily tied to the underlying petition for commitment and commitment order in multiple ways. Because a Chapter 980 discharge petition seeks discharge from commitment, a Chapter 980 discharge petition cannot exist unless a person was committed in a Chapter 980 action. See State v. Arends, 2010 WI 46, ¶ 15, 325 Wis. 2d 1, 784 N.W.2d 513 ("If the State wishes to commit a sexually violent offender, it must file a [commitment] petition. . . ."). A valid Chapter 980 commitment order cannot otherwise be terminated without a court order discharging that person from commitment; such discharge orders most often result from a discharge petition and trial. See Wis. Stat. §§ 980.06, 980.09; Arends, 325 Wis. 2d 1, ¶¶ 17, 33 n.19. Rather than being a discrete action or proceeding that ends with a commitment order, a Chapter 980 commitment action is an ongoing process that potentially extends far beyond the original commitment order.
¶ 33. Further, the Chapter 980 discharge petition process necessarily relates back to the prior proceedings in the initial court file. For example, a Chapter 980 discharge petition must allege facts that suggest that the petitioner's "condition has changed since the most recent order denying a petition for discharge after a hearing on the merits, or since the date of his or her initial commitment order if the person has never received a hearing on the merits of a discharge petition," such that he or she is no longer a sexually violent person. Wis. Stat. § 980.09(1) (2013-14) (emphases added). When reviewing a Chapter 980 discharge petition, a "court may consider the record, including evidence introduced at the initial commitment trial or the most recent trial on a petition *215 for discharge, [and] any current or past [annual reexamination] reports filed under s. 980.07 . .. ."[13] Wis. Stat. § 980.09(2) (2013-14) (emphases added).
¶ 34. Moreover, the court that originally committed a person under Chapter 980 retains administrative authority over that person during the period of commitment. For example, the committing court may order the committed person to be reexamined at any time. Wis. Stat. § 980.07(3). The committing court receives copies of the Department of Health Services' annual reexamination report and progress treatment report on the committed person.[14] See Wis. Stat. § 980.07(6)(a) (2013-14). Every petition for supervised release or discharge must be submitted to the committing court. Wis. Stat. §§ 980.08(1), 980.09(1). After receiving a petition for supervised release, the committing court appoints an expert to examine the petitioner and holds a hearing on the petition. Wis. Stat. § 980.08(3)(a), (4)(a) (2013-14). The committing court also reviews a discharge petition and oversees any necessary discharge hearing or trial. § 980.09(1), (2), (3). Each of these proceedings is part and parcel of the initial Chapter 980 action rather than the commencement of an action or a special proceeding.
*216 ¶ 35. The foregoing discussion demonstrates that a Chapter 980 discharge petition does not "commence" an "action" or a "special proceeding," but rather, it is more akin to a motion or petition in an existing action. A Chapter 980 discharge petition does not seek relief independently of the "entire controversy" of the underlying commitment. Therefore, a Chapter 980 discharge petition is part of the underlying commitment action and does not "commence" an "action" or a "special proceeding." See Henderson, 329 Wis. 2d 109, ¶ 23 (The word "action" "refers to an entire proceeding, lawsuit or controversy."); Black's Law Dictionary 1398 (10th ed. 2014) (A special proceeding "can be commenced independently of a pending action . . . ."). Stated differently, a Chapter 980 discharge petition is neither a separate "action" nor is it a "special proceeding" because it does not "occur [] entirely outside the underlying [Chapter 980] action." See Wellens, 145 Wis. 2d at 69.
¶ 36. We also disagree with Alger and Knipfer that failing to apply the Daubert evidentiary standard to the State's expert testimony in their Chapter 980 discharge petition trials is an absurd result that the legislature did not intend. First, the plain language of 2011 Wisconsin Act 2, § 45(5) states that the Daubert standard first applies to "actions" or "special proceedings" "commenced" on February 1, 2011. Second, the pre-Daubert standard was not so deficient that its continued application to Alger's and Knipfer's Chapter 980 discharge petition trials would be absurd. Alger and Knipfer opine that the Daubert standard is an entirely new and higher standard for expert opinions to be admissible. If it is as Alger and Knipfer suggest applying the Daubert standard could inject significant confusion and difficulty in review of the original Chap *217 ter 980 commitment because it would confound competing standards. Specifically, the post -Daubert experts would be reviewing, in part, the pr e-Daubert expert opinions to render an opinion as to whether the committed person's condition has changed such that he or she is no longer a sexually violent person.
¶ 37. The reality is that this kind of expert testimony offered at a Chapter 980 hearing or trial may be admissible regardless of which standard applies. See Fed. R. Evid. 702 advisory committee's notes (2000 amendments) ("A review of the caselaw after Daubert shows that the rejection of expert testimony is the exception rather than the rule. Daubert did not work a 'seachange over federal evidence law . . . .'") (quoting United States v. 14.38 Acres of Land Situated in Leflore Cnty., Miss., 80 F.3d 1074, 1078 (5th Cir. 1996)). For example, the testimony offered in the cases at issue is from licensed psychologists who hold doctoral degrees. Even pr e-Daubert, circuit courts served a gate-keeping function. The pre-Daubert standard required that (1) expert testimony assist the trier of fact; (2) expert testimony be based on "scientific, technical, or other specialized knowledge"; and (3) an expert be qualified "by knowledge, skill, experience, training, or education." Wis. Stat. § 907.02 (2009-10). Post -Daubert, the expert testimony at issue would be subject to an additional "reliability" component. But a hearing is not always required for expert testimony to be admitted under the Daubert standard. Daniel D. Blinka, The Daubert Standard in Wisconsin: A Primer, Wis. Lawyer, Mar. 2011 (citing United States v. Pena, 586 F.3d 105, 110-11 (1st Cir. 2009)). Contrary to Alger's and Knipfer's suggestion, the State's expert testimony is not the kind of "junk science" that is rejected by the Daubert standard.
*218 ¶ 38. Accordingly, we conclude that the Daubert evidentiary standard in Wis. Stat. § 907.02(1) does not apply to the expert testimony in Alger's and Knipfer's Chapter 980 discharge petition trials.
C. Whether the Failure to Apply the Daubert Evidentiary Standard to Alger's and Knipfer's Chapter 980 Discharge Petitions Violates Equal Protection and Due Process
¶ 39. To determine the merits of an equal protection claim or a substantive due process claim,[15] we must first determine which level of judicial scrutiny applies. Smith, 323 Wis. 2d 377, ¶ 12. If the challenged legislation neither implicates a fundamental right nor discriminates against a suspect class, we apply rational basis review rather than strict scrutiny to the legislation.[16] Id. A law subject to strict scrutiny will be upheld "only if narrowly tailored 'to serve a *219 compelling state interest.'" State v. Mary F.-R., 2013 WI 92, ¶ 35, 351 Wis. 2d 273, 839 N.W.2d 581 (quoting City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985)). We will uphold legislation under rational basis review "unless it is 'patently arbitrary' and bears no rational relationship to a legitimate government interest." Smith, 323 Wis. 2d 377, ¶ 12 (quoting State v. McManus, 152 Wis. 2d 113, 131, 447 N.W.2d 654 (1989)) (quotation marks omitted).
1. Which Level of Judicial Scrutiny Applies?
¶ 40. Knipfer[17] argues that strict scrutiny applies to the failure to apply the Daubert evidentiary standard to expert testimony in his Chapter 980 discharge petition trial because Chapter 980 commitment implicates his fundamental right to freedom from bodily restraint. Knipfer relies on cases where courts "assumed, without deciding" that strict scrutiny applied to claims challenging the constitutionality of aspects of Chapter 980 commitment. See State v. West, 2011 WI 83, ¶ 91, 336 Wis. 2d 578, 800 N.W.2d 929; *220 State v. Post, 197 Wis. 2d 279, 321, 541 N.W.2d 115 (1995); State v. Williams, 2001 WI App 263, ¶ 11, 249 Wis. 2d 1, 637 N.W.2d 791. Knipfer also relies on Foucha v. Louisiana, where the Supreme Court stated that involuntary civil commitment implicates an individual's "fundamental" right to freedom from bodily restraint. Foucha v. Louisiana, 504 U.S. 71, 80 (1992). Knipfer does not argue that a suspect class has been discriminated against.
¶ 41. The State argues that rational basis review applies because the failure to apply the Dauhert evidentiary standard to expert testimony in Knipfer's Chapter 980 discharge petition trial does not implicate a fundamental right or discriminate against a suspect class. The State relies on Mary F.-R., where we applied rational basis review to a challenge against the use of a non-unanimous six-person jury in a Wis. Stat. ch. 51 commitment hearing.
¶ 42. We conclude that rational basis review applies to Alger's and Knipfer's constitutional claims because the failure to apply the Dauhert evidentiary standard to expert testimony in a Chapter 980 discharge petition trial does not implicate a fundamental right. Our decision in Mary F.-R. is instructive. In that case, a circuit court ordered Mary F.-R. to be involuntarily committed under Wis. Stat. § 51.20 for treatment for her mental illness after a six-person jury unanimously found that she qualified for such commitment. Mary F.-R., 351 Wis. 2d 273, ¶¶ 2, 6. Mary F.-R. appealed the commitment order. Before this court, she argued that § 51.20(11) violated her right to equal protection because it authorized Chapter 51 commitment based on a six-person non-unanimous jury verdict. Id., ¶ 2. Her equal protection claim rested on the fact that potential Wis. Stat. ch. 51 committed persons *221 were treated differently than potential Wis. Stat. ch. 980 committed persons because the latter persons had a statutory right to a unanimous 12-person jury at their commitment hearings. Id., ¶¶ 1-2. Mary F.-R. argued that this court should apply strict scrutiny to § 51.20(11) because Chapter 51 commitment implicates her fundamental right to freedom from bodily restraint. Id., ¶ 36.
¶ 43. We held that rational basis review was the appropriate level of judicial scrutiny. Id., ¶ 38. We recognized that "liberty is a fundamental right," id. (citing Foucha, 504 U.S. at 86), and "involuntary civil commitment is a 'significant deprivation of liberty.'" Id. (quoting Addington v. Texas, 441 U.S. 418, 425 (1979)). However, rational basis review applied because "Mary F.-R.'s challenge relate[d] only to the jury procedures available for initial commitment hearings under Wis. Stat. § 51.20 and not to the use of involuntary commitments in general." Id. "There is no right to a 12 — person jury in civil proceedings such as here." Id. (citing State v. Huebner, 2000 WI 59, ¶¶ 17 — 19, 235 Wis. 2d 486, 611 N.W.2d 727). Mary F.-R. did not argue that the challenged legislation discriminated against a suspect class. Id.
¶ 44. Like in Mary F.-R., rational basis review applies in the present cases because the challenged legislation does not implicate the fundamental right to freedom from bodily restraint and there is no fundamental right to a particular evidentiary standard. Like Mary F.-R., Knipfer does not challenge "the use of involuntary commitments in general." Id. Instead, Knipfer challenges the unavailability of the Daubert evidentiary standard in his Chapter 980 discharge petition trial. Knipfer has no constitutional right to have the Daubert evidentiary standard apply. Brown v. *222 Watters, 599 F.3d 602, 616 (7th Cir. 2010). Knipfer argues that strict scrutiny applies because "evidentiary standards . . . directly impact the substantive nature of the evidence that can ultimately be submitted and considered by the finder of fact." If Knipfer were correct, then every evidentiary ruling in a Chapter 980 hearing or trial could be subject to strict scrutiny. Precedent and the fact that deference is due to a circuit court's evidentiary ruling would militate otherwise. See State v. Mark, 2006 WI 78, ¶ 35, 292 Wis. 2d 1, 718 N.W.2d 90 (stating that a circuit court's evidentiary ruling, even in a Chapter 980 proceeding, is generally reviewed under a deferential standard). Although Chapter 980 involuntary commitment implicates the right to freedom from bodily restraint, the availability of the Daubert evidentiary standard in a Chapter 980 proceeding does not implicate that right so as to trigger strict scrutiny. See Mary F.-R., 351 Wis. 2d 273, ¶ 38. There is no right to a particular evidentiary ruling in a Chapter 980 discharge petition trial.
¶ 45. Knipfer's reasons for distinguishing Mary F.-R. are unpersuasive. First, he argues that Mary F.-R. is distinguishable because the Daubert evidentiary standard, unlike a six-person, non-unanimous jury, directly impacts the right to physical liberty that is at stake in a commitment proceeding. He contends that the evidence considered by a jury more directly impacts the outcome of a commitment proceeding than the size or unanimity of a jury does. We reject this basis for distinguishing Mary F.-R. Knipfer does not persuade us that the pre-Daubert standard more directly impacts his liberty interest in a discharge trial than Mary F.-R. being tried by a non-unanimous, six-person jury in an original commitment trial. In *223 deed, the jury standard at issue in Mary F.-R. is more closely related to the liberty interest at stake in an original commitment proceeding than in a discharge trial. Moreover, that jury standard, under Wis. Stat. § 51.20(11), applies only to commitment proceedings brought under Wis. Stat. ch. 51, whereas the Daubert standard is a rule of evidence which is generally applicable in all proceedings, whether civil or criminal.
¶ 46. Knipfer's other ground for distinguishing Mary F.-R. and applying strict scrutiny is that the law at issue in Mary F.-R. differentiated between two groups that were not similarly situated (Chapter 51 committed persons and Chapter 980 committed persons), whereas the law at issue here differentiates between two groups that are similarly situated (persons whose Chapter 980 commitment was initiated before February 1, 2011, and persons whose Chapter 980 commitment was initiated on or after that date). We also disagree with this argument for applying strict scrutiny because strict scrutiny does not apply if neither a fundamental right is implicated nor a suspect class is discriminated against. See Smith, 323 Wis. 2d 377, ¶ 12. A court determines whether differently-treated groups are similarly situated and hence, whether equal protection is violated, by applying a particular level of judicial scrutiny. See Plyler v. Doe, 457 U.S. 202, 216-18 (1982); Mary F.-R., 351 Wis. 2d 273, ¶ 55 (" '[W]hen properly understood and applied, "similarly situated" is another way of stating the fundamental values of the Equal Protection Clause.'") (quoting Giovanna Shay, Similarly Situated, 18 Geo. Mason L. Rev. 581, 615 (2011)); Smith, 323 Wis. 2d 377, ¶ 15 ("The equal protection clause . . . 'is designed to assure that those who are similarly *224 situated will be treated similarly.' ") (quoting Treiber v. Knoll, 135 Wis. 2d 58, 68, 398 N.W.2d 756 (1987)).
¶ 47. Knipfer's reliance on cases where courts applied strict scrutiny in the Chapter 980 context requires further explanation. The cases relied upon by Knipfer challenged procedural aspects of Chapter 980 commitment which directly impacted one's right to freedom from bodily restraint, whereas the application of a particular rule of evidence is much further removed from that direct impact on restraint of freedom. See West, 336 Wis. 2d 578, ¶ 5 (challenging law that placed burden of proof on committed person seeking supervised release); Post, 197 Wis. 2d at 292-93 (challenging Chapter 980 commitment in general); Williams, 249 Wis. 2d 1, ¶¶ 2-3 (challenging prohibition on filing a petition for supervised release within first 18 months of commitment). Further, the courts in those cases "assumed, without deciding" that strict scrutiny was the appropriate level of judicial scrutiny for those equal protection claims. See West, 336 Wis. 2d 578, ¶¶ 91-99; Post, 197 Wis. 2d at 321; Williams, 249 Wis. 2d 1, ¶ 11.[18] Such an assumption is hardly a conclusion that strict scrutiny is the applicable standard in the cases at issue. In the present cases, rational basis review is appropriate because the Daubert standard is a generally applicable rule of *225 evidence that does not directly impact one's right to freedom from bodily restraint. See Mary F.-R., 351 Wis. 2d 273, ¶ 38.
¶ 48. In sum, we hold that rational basis review applies to Knipfer's equal protection and substantive due process claims and to Alger's equal protection claim.
2. Whether Rational Basis Review Is Satisfied
¶ 49. Our analysis applying rational basis review is the same for Knipfer's substantive due process claim as for Alger's and Knipfer's equal protection claims. See Smith, 323 Wis. 2d 377, ¶¶ 12, 16. To resolve the substantive due process and equal protection claims, we must determine whether a legitimate governmental interest is rationally furthered by the failure to apply the Daubert evidentiary standard to Alger's and Knipfer's Chapter 980 discharge petitions. See id., ¶ 12.
¶ 50. Rational basis review is deferential to the legislature. Id., ¶ 17. A legislative classification satisfies rational basis review if " 'any reasonably conceivable state of facts . . . could provide a rational basis for the classification.'" Mary F.-R., 351 Wis. 2d 273, ¶ 52 (quoting F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993)). The legislature need not have actually based its decision on the reason conceived by a reviewing court. Id. (citing Beach Commc'ns, 508 U.S. at 315). Alger and Knipfer bear the "high burden" of proving that the failure to apply the Daubert evidentiary standard to expert testimony in their Chapter 980 discharge petition trials is unconstitutional beyond a reasonable doubt. Smith, 323 Wis. 2d 377, ¶ 18.
*226 ¶ 51. Alger and Knipfer[19] argue that the failure to apply the Daubert evidentiary standard to expert testimony in their Chapter 980 discharge petition trials violates equal protection because it arbitrarily differentiates between discharge proceedings based upon when their underlying commitment proceedings began. Alger and Knipfer provide a hypothetical scenario in which the State files a Wis. Stat. ch. 980 commitment petition against Person A in January 2011 and files one against Person B in February 2011. Under this hypothetical scenario, both of these persons are committed and have discharge proceedings at the same time as each other. Alger and Knipfer argue that it would be unconstitutionally arbitrary to apply the Daubert standard to the discharge proceedings of Person B while applying the pre-Daubert standard to the discharge proceedings of Person A.
¶ 52. In his brief, "Alger concedes the state did have a legitimate interest in seeking to prevent the revision of [Wis. Stat. §] 907.02 from applying 'midstream' to litigation that was already pending (or even concluded) at the time this legislation was enacted." Alger argues that, in such litigation, attorneys would have prepared expert testimony in reliance on the pre-Daubert standard that was then in place. Because applying the Daubert standard to such litigation would be unfair and disruptive and would waste judicial resources, Alger concedes that the legislature lawfully prohibited application of the Daubert standard to such litigation. Similarly, Knipfer admits that "the legislature might have had a valid reason not to extend the Daubert standard to pending litigation insofar as liti *227 gants may have already relied upon the [pre-Daubert] standard in filing pleadings and preparing for trial."
¶ 53. However, Alger and Knipfer contend, the reasons for refusing to apply the Daubert evidentiary standard "midstream" to pending litigation do not apply to their Chapter 980 discharge petition trials. Alger and Knipfer reason that, because they filed their discharge petitions after the Daubert standard's first date of applicability, they and the State did not prepare any expert testimony for their discharge petition trials in reliance on the pr e-Daubert standard. Alger and Knipfer therefore argue that the failure to apply the Daubert standard to expert testimony in their discharge petition trials is not rationally related to achieving a legitimate governmental interest.
¶ 54. The State argues that the failure to apply the Daubert evidentiary standard to expert testimony in Alger's and Knipfer's Chapter 980 discharge petition trials satisfies rational basis review and is therefore constitutional. The State argues that the legislature had to draw the line somewhere and the line it drew has a rational basis. The State reasons that the legislature's application of the Daubert standard to "actions" and "special proceedings" commenced on or after February 1, 2011, promoted efficiency and predictability and avoided difficulties involved with a rule that allows for retroactive application of the Daubert standard.
¶ 55. We hold that the legislature's decision to apply the Daubert evidentiary standard to "actions" or "special proceedings" "commenced" on or after February 1, 2011, satisfies rational basis review and therefore is constitutional. Alger correctly concedes that ensuring the fair treatment of litigants, avoiding the disruption of pending litigation, and preserving judi *228 cial resources are legitimate governmental interests. See State ex rel. Schatz v. McCaughtry, 2003 WI 80 ¶ 43, 263 Wis. 2d 83, 664 N.W.2d 596 ("The State has a legitimate interest in . . . preserving judicial resources.") (citing State ex rel. Khan v. Sullivan, 2000 WI App 109, ¶ 10, 235 Wis. 2d 260, 613 N.W.2d 203). See also supra ¶¶ 36-37 (noting that applying the Daubert standard to Alger's and Knipfer's Chapter 980 discharge petitions could have caused confusion and difficulty).
¶ 56. Further, the legislature's decision to apply the Daubert evidentiary standard to "actions" or "special proceedings" "commenced" on or after February 1, 2011, is rationally related to achieving those legitimate governmental interests. The legislature could have rationally believed that retroactively applying a new rule of evidence to pending litigation would be unfair to litigants, waste judicial resources, and disrupt that litigation by resulting in motions, appeals, and retrials. See Martin v. Richards, 192 Wis. 2d 156, 201, 531 N.W.2d 70 (1995) (explaining that "retroactive legislation presents unique constitutional problems in that it often unsettles important rights" and may result in "unfairness").
¶ 57. When determining which cases will be subject to a new rule of evidence, the legislature is not constitutionally required to differentiate between various types of cases and retroactively apply the new rule to some types of cases and not others. Instead, the legislature may differentiate between cases that were commenced before and after a particular date and may apply the new rule of evidence to only cases that were commenced after that date. See Sperry & Hutchinson Co. v. Rhodes, 220 U.S. 502, 505 (1911) ("[T]he 14th *229 Amendment does not forbid statutes and statutory-changes to have a beginning, and thus to discriminate between the rights of an earlier and later time."); Plankinton Packing Co. v. Wis. Tax Comm'n, 198 Wis. 368, 373, 224 N.W. 121 (1929) (upholding a law that applied a higher interest rate to tax deficiencies that were assessed before 1927 than to those assessed in or after 1927); Montgomery Ward & Co. v. DOR, 142 Wis. 2d 772, 778-82, 419 N.W.2d 348 (Ct. App. 1987) (upholding a law that applied a higher interest rate to tax deficiencies that were assessed on or after August 1, 1981, than to tax deficiencies that were assessed before that date). Therefore, in the present cases, the legislature's decision to apply the Daubert evidentiary standard to "actions" and "special proceedings" that were commenced on or after February 1, 2011, survives constitutional scrutiny. See Banas v. State, 34 Wis. 2d 468, 473, 149 N.W.2d 571 (1967) (The legislature has the "power to make reasonable rules for limiting the admission of evidence and to make valid classifications of people for that purpose.").
¶ 58. We also conclude that application of the Daubert evidentiary standard to these Chapter 980 discharge petition trials is a "midstream" application of that standard to pending litigation. Alger's and Knipfer's contrary conclusion is based on the mistaken premise that the only expert testimony relevant to their Chapter 980 discharge petitions is the expert testimony proffered at their discharge petition trials. But we have already concluded that a Chapter 980 discharge petition is part of a pending commitment action. As we explained earlier, when reviewing a Chapter 980 discharge petition, a court often considers expert testimony from a prior discharge proceeding or the initial commitment trial. See Wis. Stat. § 980.09(1), *230 (2). The State's experts at Alger's and Knipfer's original Chapter 980 commitment trials were not subject to the Daubert evidentiary standard. The Daubert standard did not apply to any previous proceeding in Alger's and Knipfer's cases. However, a Chapter 980 discharge petition requires that an expert render an opinion based in part upon the previous determination of continued commitment. The fact that a petition for discharge requires an expert to evaluate and review prior expert opinions and whether commitment is still warranted, militates in favor of, not against, having the same legal standard apply. Thus, we reject Alger's and Knipfer's contention that their Chapter 980 discharge petitions were not part of a pending action that could be disrupted by "midstream" application of a new rule of evidence.[20] Moreover, as was previously discussed, this kind of expert testimony in a Chapter 980 case will often meet the Daubert standard even though it was admitted under the pre-Daubert standard. See supra ¶ 37.
¶ 59. Our rejection of Alger's and Knipfer's equal protection challenges and Knipfer's substantive due process challenge is even supported by cases in which Wisconsin courts upheld changes to Chapter 980 procedures under strict scrutiny. See West, 336 Wis. 2d 578, ¶¶ 98-99 (upholding a statute that placed the burden of proof on a Chapter 980 committed person *231 who petitions for supervised release); Williams, 249 Wis. 2d 1, ¶ 20 (upholding an 18-month waiting period for petitioning for supervised release). We conclude that the failure to apply the Daubert evidentiary standard to expert testimony at Alger's and Knipfer's Chapter 980 discharge petition trials satisfies rational basis review. Further, the petitioners in Williams and West challenged unique procedures applicable to Chapter 980, whereas Alger's and Knipfer's challenges center on a generally applicable rule of evidence.
¶ 60. In sum, we hold that the failure to apply the Daubert evidentiary standard to expert testimony in Alger's and Knipfer's Chapter 980 discharge petition trials satisfies rational basis review, and therefore survives constitutional scrutiny.
III. CONCLUSION
¶ 61. We conclude that the Daubert evidentiary standard under Wis. Stat. § 907.02(1) does not apply to expert testimony in Alger's and Knipfer's Wis. Stat. ch. 980 discharge petition trials because their discharge petitions did not "commence" "actions" or "special proceedings." The Daubert standard applies to "actions" or "special proceedings" commenced on or after February 1, 2011. The original Chapter 980 commitments here began several years before the Daubert standard was adopted, and although Alger's and Knipfer's petitions seek relief from those original commitments, those filings do not constitute the "commencement" of an "action" or a "special proceeding." We also conclude that because the legislature had a rational basis for not applying the Daubert evidentiary standard to expert testimony in post -Daubert Chapter 980 discharge petitions that seek relief from pr e-Daubert *232 Chapter 980 commitments, no violation of equal protection or due process occurred.
By the Court. — The decisions of the court of appeals are affirmed.

 We consolidated these two cases after oral argument because they present similar issues and facts.

 The Honorable John A. Des Jardins presided.

 All subsequent references to the Wisconsin Statutes are to the 2011 — 12 version unless otherwise indicated. Wisconsin Stat. § 980.01(7) provides:
"Sexually violent person" means a person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of or not responsible for a sexually violent offense by reason of insanity or mental disease, defect, or illness, and who is dangerous because he or she suffers from a mental disorder that makes it likely that the person will engage in one or more acts of sexual violence.

 The Honorable Nicholas McNamara presided.

 See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993) (holding that, under the Federal Rules of Evidence, expert testimony must be reliable and relevant to be admissible).

 Wisconsin Stat. § 907.02(1) provides:
*201 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.
Wisconsin Stat. § 907.02(1) was adopted by 2011 Wis. Act 2, § 34M.

 2011 Wis. Act 2, § 45(5) provides:
CIVIL ACTIONS. The treatment of sections 230.85(3)(b), 802.10(7), 809.103(2)(a), 814.04 (intro.), 814.29(3)(a), 895.043(6), 895.044, 895.045(3), 895.046, 895.047, and 907.03 of the statutes, the renumbering and amendment of sections 907.01 and 907.02 of the statutes, and the creation of sections 907.01(3) and 907.02(2) of the statutes first apply to actions or special proceedings that are commenced on the effective date of this subsection.
The effective date was the following day, February 1, 2011. See Wis. Stat. § 991.11.

 The court of appeals held that Alger conceded that his discharge petition did not commence a special proceeding. State v. Alger, 2013 WI App 148, ¶ 11, 352 Wis. 2d 145, 841 N.W.2d 329. Knipfer's argument also centers on whether the *202 discharge petition commenced an "action." Nevertheless, we will address whether Alger's and Knipfer's Chapter 980 discharge petitions commenced "special proceedings."

 Although Alger and Knipfer seem to argue that the mere failure to apply the Daubert evidentiary standard was unconstitutional, their argument seems to hinge on their view that the State's expert testimony would have been inadmissible under the Daubert standard.

 The Fourteenth Amendment to the United States Constitution provides in part, "No State shall. . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const, amend. XIV, § 1. Article I, Section 1 of the Wisconsin Constitution provides: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed." This court has held that the Wisconsin Constitution's due process clause is the substantial equivalent of the federal due process clause. State v. West, 2011 WI 83, ¶ 5 n.2, 336 Wis. 2d 578, 800 N.W.2d 929 (citation omitted). This court's interpretation is the same for the state and federal equal protection clauses. Id. (citation omitted).

 Knipfer makes an additional argument that the Daubert evidentiary standard should apply to expert testimony at his Chapter 980 discharge petition trial because amendments to procedural rules generally apply retroactively. E.g., Trinity Petroleum, Inc. v. Scott Oil Co., 2007 WI 88, ¶ 40, 302 Wis. 2d 299, 735 N.W.2d 1 ("The general, well-recognized rule in Wisconsin jurisprudence is that 'if a statute is procedural or remedial, rather than substantive, the statute is generally given retroactive application.'") (quoting Gutter v. Seamandel, 103 Wis. 2d 1, 17, 308 N.W.2d 403 (1981)). However, that general rule is inapplicable if the amendment's text explains when the new rule first applies. See id., ¶¶ 34-39. In the present cases, that general rule is inapplicable because the legislature explained that the Daubert standard would "first apply to actions or special proceedings that are commenced on the effective date of this subsection." 2011 Wis. Act 2, § 45(5).

 See supra note 7.

 Every 12 months after a person has been committed under Wis. Stat. ch. 980, the Department of Health Services ("Department") must reexamine the person and make a report of the reexamination. Wis. Stat. § 980.07(1), (2). During the annual reexamination, the Department must also make a report on the person's treatment progress. Wis. Stat. § 980.07(4). The Department must submit each reexamination report and treatment progress report to the committing court. Wis. Stat. § 980.07(6)(a) (2013-14). The committing court may order a reexamination at any time while the person is committed. § 980.07(3).

 See supra note 13 for a discussion of these reports.

 Knipfer alleges violations of substantive and procedural due process. "Under a procedural due process analysis, we must determine first whether there exists a liberty interest of which the individual has been deprived, and if so, whether the procedures used to deprive that liberty interest were constitutionally sufficient." West, 336 Wis. 2d 578, ¶ 83 (citing Kentucky Dep't of Corn v. Thompson, 490 U.S. 454, 460 (1989)). Although Knipfer has a protectable liberty interest in freedom from bodily restraint, id., f 85, he has no protectable interest in the Daubert evidentiary standard. See Brown v. Watters, 599 F.3d 602, 616 (7th Cir. 2010). Therefore, the failure to apply the Daubert standard to Knipfer's Chapter 980 discharge petition does not violate his right to procedural due process. See West, 336 Wis. 2d 578, ¶ 89. Alger does not rely on due process at all. Accordingly, our analysis will focus on substantive due process and equal protection.

 A law that implicates a fundamental right is not necessarily subject to strict scrutiny. Whether strict scrutiny applies *219 sometimes depends on the degree to which the law burdens a fundamental right. See Burdick v. Takushi, 504 U.S. 428, 434 (1992) (strict scrutiny applies to " 'severe' restrictions" on the fundamental right to vote, and rational basis review applies to " 'reasonable, nondiscriminatory restrictions'" on that right) (citations omitted); Zablocki v. Redhail, 434 U.S. 374, 386-88 (1978) (rational basis review applies to "reasonable regulations that do not significantly interfere with" the fundamental right to marry, and strict scrutiny applies to a law that "significantly interferes" with that right) (citations omitted).

 The court of appeals held that Alger conceded that rational basis review applies. See Alger, 352 Wis. 2d 145, ¶ 25. Our strict scrutiny and rational basis analysis applies to Alger and Knipfer alike.

 Knipfer asserts that this court in State v. Post held, rather than assumed without deciding, that strict scrutiny-applied to a substantive due process claim challenging ch. 980 commitment in general. See State v. Post, 197 Wis. 2d 279, 302, 541 N.W.2d 115 (1995). However, even if that interpretation of Post is correct, strict scrutiny does not apply in the present cases because the failure to apply the Daubert evidentiary standard to a Chapter 980 discharge petition does not directly impact a fundamental right.

 Although Knipfer argues that we should apply strict scrutiny, he also argues that he should prevail even if we apply rational basis review.

 Even if a Chapter 980 commitment is unlike other types of pending litigation that could be disrupted by "midstream" application of a new rule of evidence, the legislature's decision to apply the Daubert evidentiary standard to "actions" or "special proceedings" commenced on or after February 1, 2011, is still constitutional under rational basis review. A legislative enactment can be rationally related to achieving a legitimate governmental interest even if it is overinclusive. See Vance v. Bradley, 440 U.S. 93, 108 (1979).