*44 SHIRLEY S. ABRAHAMSON, J.
¶ 59. (concurring in part, dissenting in part). At issue in this case are (1) whether Wis. Stat. § 51.20(l)(ar), which permits the involuntary commitment of mentally ill prisoners, is facially unconstitutional because it does not require a finding of dangerousness to involuntarily commit a prisoner; and (2) whether Winnebago County met its burden of proof by clear and convincing evidence that the defendant, Christopher S., was incompetent to refuse psychotropic medication.
¶ 60. The majority opinion holds that Wis. Stat. § 51.20(l)(ar) is facially constitutional[1] even though the statute does not require a finding of dangerousness to involuntarily commit a prisoner to a mental institution.[2] Applying the rational basis test, the majority opinion concludes that the involuntary commitment statute does not violate substantive due process because it is reasonably related to a legitimate state interest, namely "providing care and assistance to [prisoners] suffering from mental illness."[3]
¶ 61. I write separately to make two points:
(1) Although several Wisconsin and United States Supreme Court cases are informative, none clearly describes the standard to be applied to a substantive due process challenge to a prisoner's involuntary commitment to a mental institution. I conclude that the State must show an "essential" or "overriding" state interest — for example, ensuring prison safety or security, or providing treatment to a gravely disabled prisoner — to overcome a pris *45 oner's significant, constitutionally protected liberty interests in avoiding involuntary commitment to a mental institution and the stigma attached thereto. The majority opinion does not interpret Wis. Stat. § 51.20(l)(ar) as requiring an "essential" or "overriding" state interest to involuntarily commit a prisoner to a mental institution. Unless it is so interpreted, I conclude that the statute is unconstitutional as a matter of substantive due process.
(2) I concur in the majority opinion's conclusion that Winnebago County met its burden of proving by clear and convincing evidence that Christopher S. was incompetent to refuse psychotropic medication as required for involuntary medication under Wis. Stat. § 51.61(g).[4] Nevertheless, in recognition of the significant, constitutionally protected liberty interests at play in involuntary medication proceedings, the County and the circuit court should take the time to make a record pursuant to Outagamie County v. Melanie L., 2013 WI 67, ¶ 67, 349 Wis. 2d 148, 833 N.W.2d 607.
¶ 62. For the reasons set forth, I dissent in part and write separately.
I
¶ 63. Applying the rational basis test, the majority opinion determines that Wis. Stat. § 51.20(l)(ar) is facially constitutional because commitment under Wis. Stat. § 51.20(l)(ar) is reasonably related to the State's interest "in providing care and assistance to [prison *46 ers] suffering from mental illness."[5] The majority opinion also concludes that substantive due process does not require a finding of dangerousness in order to involuntarily commit a prisoner to a mental institution.[6]
¶ 64. Despite acknowledging prisoners' constitutionally protected liberty interests in being free from involuntary commitment to a mental institution and the associated stigma, the majority opinion gives the prisoner's liberty interest little or no weight.
¶ 65. In a substantive due process challenge, a court must first define the individual's protected constitutional interest before identifying when, if at all, a competing state interest might outweigh it. State v. Wood, 2010 WI 17, ¶ 18, 323 Wis. 2d 321, 780 N.W.2d 63 (quoting Washington v. Harper, 494 U.S. 210, 220 (1990)).
¶ 66. All persons, including prisoners, have a significant, constitutionally protected liberty interest in avoiding involuntary commitment to a mental institution and the stigma often associated with such a commitment.[7]
*47 ¶ 67. The United States Supreme Court has not ruled on what level of scrutiny applies when a court reviews a statute implicating a prisoner's liberty interest in not being involuntarily committed to a mental institution and experiencing the associated stigma. Nonetheless, some guidance can be derived from relevant case law.
¶ 68. In Vitek v. Jones, 445 U.S. 480 (1980), the United States Supreme Court addressed the procedural due process protections required for involuntarily transferring a prisoner to a mental institution. The Court determined that a prisoner facing involuntary transfer to a mental institution has a constitutionally protected liberty interest in avoiding the deprivation of liberty and the stigma associated with such a transfer.[8] Prisoners have such liberty interests even though they are imprisoned because a criminal sentence "do[es] not authorize the State to classify [a prisoner] as mentally ill and to subject him to involuntary psychiatric treatment without affording him additional due process protections."[9] Nevertheless, the Vitek Court did not state what level of scrutiny applies when gauging the constitutionality of a statute authorizing the involuntary commitment of a prisoner to a mental institution.
*48 ¶ 69. In Washington v. Harper, 494 U.S. 210 (1990), the United States Supreme Court applied rational basis scrutiny to a prison regulation authorizing the involuntary medication of dangerous or gravely disabled prisoners.[10] The Court stated that the rational basis test applied in light of the State's interests in prison safety and security, even though prisoners have a liberty interest in avoiding the involuntary administration of antipsychotic medication.[11] In applying the rational basis test to the challenged prison regulation, the Harper Court described the state's interest — the safety of prisoners and staff — as legitimate, important, and "necessarily encompass [ing] an interest in providing [the mentally ill prisoner] with medical treatment for his illness."[12]
¶ 70. Although Harper stated it was applying rational basis scrutiny, the United States Supreme Court has subsequently described Harper and other involuntary medication cases as holding that involuntary medication of a prisoner is impermissible absent an "essential" or "overriding" state interest.[13] See Sell v. United States, 539 U.S. 166, 179 (2003) ("[A]n individual has a constitutionally protected liberty interest in avoiding involuntary administration of antipsychotic drugs — an interest that only an 'essential' or 'overriding' state interest might overcome.") (internal quotation marks omitted); Riggins v. Nevada, 504 U.S. 127, 135 (1992) ("Under Harper, forcing antipsychotic drugs on a convicted prisoner is impermissible absent *49 a finding of overriding justification and a determination of medical appropriateness.").
¶ 71. Thus, Sell and Riggins (as well as State v. Wood, 2010 WI 17, ¶ 25, 323 Wis. 2d 321, 780 N.W.2d 63) incorporate the need for an "essential" or "overriding" state interest, at least in involuntary medication cases.
¶ 72. An "essential" or "overriding" state interest is not required in applying rational basis scrutiny. In an ordinary rational basis analysis, like the majority opinion conducts, a court decides whether the challenged statute is rationally related to a legitimate state interest.[14] Thus, the United States Supreme Court's requirement of an "essential" or "overriding" state interest indicates that a more searching analysis is required, at least when the State seeks to involuntarily medicate a prisoner.
¶ 73. Involuntary medication and involuntary commitment to a mental institution impose similar burdens on prisoners' constitutionally protected liberty interests. As a result, the two should be treated similarly in conducting a substantive due process analysis.
¶ 74. Both involuntary medication and involuntary commitment to a mental institution "exceed!] [a criminal] sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . ."[15]
¶ 75. Both involuntary medication and involuntary commitment to a mental institution are " 'qualitatively different' from the punishment characteristi *50 cally suffered by a person convicted of crime, and ha[ve] 'stigmatizing consequences.' "[16] As a result, the mere fact that a prisoner is serving a criminal sentence does not authorize the State to designate the prisoner as mentally ill, involuntarily commit him or her to a mental institution, or involuntarily medicate him or her without significant due process protections.[17]
¶ 76. Furthermore, involuntary commitment to a mental institution under Wis. Stat. § 51.20(l)(ar) and involuntary medication under Wis. Stat. § 51.61(l)(g) are significantly intertwined, more than the majority opinion lets on.
¶ 77. The close relationship between Wis. Stat. § 51.20(l)(ar) and Wis. Stat. § 51.61(l)(g) (as demonstrated by the facts of this case) further illustrates why requiring, as a matter of substantive due process, an "essential" or "overriding" state interest in both involuntary commitment and involuntary medication cases is appropriate.
¶ 78. In the instant case, Christopher S. was ordered involuntarily committed and involuntarily medicated in the same proceeding, before the same judge, in the same court, on the same day. A temporary involuntary medication order was also entered during the pendency of Christopher S.'s involuntary commitment proceedings.
¶ 79. While the jury was deliberating whether Christopher S. should be involuntarily committed, the trial judge conducted a bench trial to determine whether Christopher S. could be involuntarily medicated. Based on the jury verdict, the trial judge *51 granted the petition for involuntary commitment for a six-month period. The trial judge also issued an involuntary medication order.
¶ 80. One of the requirements for involuntary commitment of a prisoner to a mental institution under Wis. Stat. § 51.20(l)(ar) is that the prisoner be "a proper subject for treatment and [be] in need of treatment."
¶ 81. For what treatment did the County seek to involuntarily commit Christopher S.? The involuntary administration of psychotropic medication.
¶ 82. Simply put, the County sought to involuntarily commit Christopher S. for the purpose of treating him by involuntarily administering psychotropic medication. Despite the majority opinion's efforts to distinguish between the two statutes for the purpose of its constitutional analysis, the two statutes are, in fact, intimately intertwined.
¶ 83. Upon consideration of the case law and the relationship between involuntary medication and involuntary commitment, I conclude that when the State seeks to involuntarily commit or involuntarily medicate a prisoner, an "essential" or "overriding" state interest is required to outweigh the prisoner's significant, constitutionally protected liberty interests in avoiding involuntary medication or involuntary commitment and the associated stigma.
¶ 84. Although I agree with the majority opinion that a finding of dangerousness is not required to outweigh a prisoner's constitutionally protected liberty interests, I conclude that when the State seeks to involuntarily commit a prisoner, the State must demonstrate an "essential" or "overriding" state interest to outweigh the prisoner's significant, constitutionally protected liberty interests in avoiding involuntary *52 commitment and the associated stigma. Such an "essential" or "overriding" state interest may be, for example, safeguarding the prison, prisoners, and staff against a mentally ill prisoner who is dangerous to him or herself or others, or providing treatment to a gravely disabled prisoner.
¶ 85. The majority opinion concludes the state's interest "in providing care and assistance to [prisoners] suffering from mental illness"[18] is sufficient. Although the majority opinion describes this state interest as "compelling,"[19] providing involuntary care and assistance to prisoners suffering from mental illness, standing alone, is not an "essential" or "overriding" state interest as these terms are used in the case law. Providing involuntary care and assistance to prisoners suffering from mental illness is not an "essential" or "overriding" state interest unless the prisoner poses a danger to self or others, is gravely disabled, or another "essential" or "overriding" state interest exists.
¶ 86. The state's interest in providing care and assistance to mentally ill prisoners (or others within the State's care) is present in all involuntary commitment and involuntary medication cases. The United States Supreme Court's involuntary medication and involuntary commitment cases have, however, all focused on state interests above and beyond providing care and assistance to the mentally ill person. The Court has addressed, for instance, "essential" or "overriding" interests such as ensuring the safety and security of the prison, treating a gravely disabled *53 prisoner,[20] restoring trial competency,[21] or protecting society and providing treatment to individuals found not guilty by reason of insanity.[22]
¶ 87. If the state's interest in providing care and assistance to mentally ill prisoners were sufficient to overcome a prisoner's countervailing liberty interests, then a statute permitting involuntary commitment or involuntary medication based solely on a finding of mental illness would be constitutionally permissible. However, a finding of mental illness alone is not enough to support involuntary commitment.[23]
¶ 88. Unlike providing care and assistance to mentally ill prisoners, ensuring the safety and security of prisons, prison staff, and prisoners by removing dangerous (to self or others) mentally ill prisoners, or providing care and treatment to gravely disabled prisoners, are "essential" and "overriding" state interests. Wisconsin Stat. § 51.20(l)(ar) is not, however, limited to circumstances in which "essential" and "overriding" state interests are present.
¶ 89. On the contrary, Wis. Stat. § 51.20(l)(ar) does not require the State or County to have any interest above and beyond providing care and assistance to mentally ill prisoners. The statute provides:
If the individual is an inmate of a state prison, the petition may allege that the inmate is mentally ill, is a proper subject for treatment and is in need of treatment. The petition shall allege that appropriate less *54 restrictive forms of treatment have been attempted with the individual and have been unsuccessful and it shall include a description of the less restrictive forms of treatment that were attempted. The petition shall also allege that the individual has been fully informed about his or her treatment needs, the mental health services available to him or her and his or her rights under this chapter and that the individual has had an opportunity to discuss his or her needs, the services available to him or her and his or her rights with a licensed physician or a licensed psychologist. The petition shall include the inmate's sentence and his or her expected date of release as determined under s. 302.11 or 302.113, whichever is applicable. The petition shall have attached to it a signed statement by a licensed physician or a licensed psychologist of a state prison and a signed statement by a licensed physician or a licensed psychologist of a state treatment facility attesting either of the following:
1. That the inmate needs inpatient treatment at a state treatment facility because appropriate treatment is not available in the prison.
2. That the inmate's treatment needs can be met on an outpatient basis in the prison.
¶ 90. As a result, the text of Wis. Stat. § 51.20(l)(ar) is not rationally related to an "essential" or "overriding" state interest. Pursuant to Wis. Stat. § 51.20(l)(ar), the State or County may commit a mentally ill prisoner without any "essential" or "overriding" state interest.
¶ 91. Because Wisconsin Stat. § 51.20(l)(ar) is not reasonably related to an "essential" or "overriding" state interest, I conclude Wis. Stat. § 51.20(l)(ar) is unconstitutional as a matter of substantive due process.
*55 II
¶ 92. Finally, I wish to offer a brief comment about Christopher S.'s claim that the County did not show by clear and convincing evidence that he was incompetent to refuse psychotropic medication.
¶ 93. As I explained above, the jury trial regarding Christopher's involuntary commitment took place the same day as the bench trial regarding his involuntary medication. Only one witness, Dr. Keshena, testified.
¶ 94. The direct examination of Dr. Keshena largely parroted the language of Wis. Stat. § 51.61(l)(g)4.b., stating, in relevant part:
Q. Dr. Keshena, in the course of your treatment of [Christopher], have you had an opportunity to explain to him the advantages, disadvantages, and alternatives to the medication?
A. Yes.
Q. And after you've done that, in your opinion would he be substantially incapable or substantially capable of applying an understanding of the advantages, disadvantages, and alternatives to his own condition in order to make an informed choice as to whether to accept or refuse psychotropic medication?
A. He's not capable.
Q. So you're saying he's substantially incapable?
A. Yes.
¶ 95. Elsewhere in the record there is ample evidence that the doctors who treated Christopher S. explained the advantages, disadvantages, and alterna *56 tives to medication to him. The trial judge was familiar with this evidence. As a result, I concur in the majority opinion's conclusion that the County met its burden of proving by clear and convincing evidence that Christopher S. was incompetent to refuse psychotropic medication and treatment.
¶ 96. Nevertheless, I write separately to point out that the majority opinion explains that Dr. Keshena's testimony was "not disputed at trial," so it was "not necessary for Dr. Keshena to engage in a lengthier discussion of her explanation of the advantages, disadvantages, and alternatives" under Outagamie County v. Melanie L., 2013 WI 67, ¶ 67, 349 Wis. 2d 148, 833 N.W.2d 607.[24] Although lengthier discussion may not have been necessary because of the record in this case, given the significant constitutional rights at stake, the County should develop a sufficient record to show that, for instance, the person was advised of the advantages, disadvantages, and alternatives to treatment in order to enable appellate review. See Melanie L., 349 Wis. 2d 148, ¶ 67.
¶ 97. For the reasons set forth, I dissent in part and write separately.
¶ 98. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

 Majority op., ¶ 8.

 Majority op., ¶ 46 n.26.

 Majority op., ¶ 8.

 Majority op., ¶ 57.

 Majority op., ¶ 8.

 Majority op., ¶¶ 42, 46 & n.26.

 See, e.g., Sandin v. Conner, 515 U.S. 472, 479 n.4, 484 (1995) (describing a prisoner's interest in not being transferred to a mental institution as a constitutionally protected liberty interest and stating that involuntary commitment to a mental institution is " 'qualitatively different' from the punishment characteristically suffered by a person convicted of crime, and halving] 'stigmatizing consequences.'") (referencing Vitek v. Jones, 445 U.S. 480, 493—94 (1980) and Washington v. Harper, 494 U.S. 210, 221—22 (1990)); Foucha v. Louisiana, 504 U.S. 71, 79-80 (1992) (holding that given an individual's liberty interests, an individual found not guilty by reason of insanity could not continue to be confined after he was no longer *47 mentally ill and did not pose a danger to himself or others); Vitek v. Jones, 445 U.S. 480, 493 (1980) (holding that the involuntary transfer of a prisoner to a mental hospital implicated a liberty interest protected by the due process clause); Addington v. Texas, 441 U.S. 418, 425 (1979) (stating that involuntary commitment "for any purpose constitutes a significant deprivation of liberty that requires due process protection" and may subject a committed individual to stigma even after the commitment and criminal sentence have ended)).

 Vitek, 445 U.S. at 494.

 Vitek, 445 U.S. at 494.

 Harper, 494 U.S. at 224, 226.

 Harper, 494 U.S. at 223.

 Harper, 494 U.S. at 225-26.

 So has this court. See State v. Wood, 2010 WI 17, ¶¶ 19-20, 22-25, 323 Wis. 2d 321, 780 N.W.2d 63 (discussing Harper, Riggins, and Sell).

 See State v. Alger, 2015 WI 3, ¶ 39, 360 Wis. 2d 193, 858 N.W.2d 346.

 Sandin, 515 U.S. at 484 (citing Harper, 494 U.S. at 221-22; Vitek, 445 U.S. at 493).

 Sandin, 515 U.S. at 479 n.4 (quoting Vitek, 445 U.S. at 493-94).

 See Sandin, 515 U.S. at 484.

 Majority op., ¶ 8.

 Majority op., ¶ 44.

 See Harper, 494 U.S. at 222-24.

 See Sell, 539 U.S. at 178-80.

 See Jones v. United States, 463 U.S. 354, 365-66 (1983).

 See, e.g., O'Connor v. Donaldson, 422 U.S. 563, 575 (1975) (implying that a State's legitimate interests in providing care and treatment could not overcome a person's liberty interests).

 Majority op., ¶ 56.